UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| HONOR PLASTIC INDUSTRIAL CO. LTD and P&P INTERNATIONAL INC.,<br><br>Plaintiffs,<br><br>v.<br><br>LOLLICUP USA, INC.,<br><br>Defendant. | CIV-F-06-0707 AWI DLB<br><br>ORDER RE: MOTION TO DISMISS FOR IMPROPER VENUE OR, IN THE ALTERNATIVE TO TRANSFER VENUE |

This case is before the court on Defendant's motion for dismissal pursuant to Fed. R. Civ. Proc. 12(b)(3), improper venue, or, in the alternative for transfer under 28 U.S.C. §1406[1] to the Central District of California. Doc. 17. Plaintiffs have filed a timely opposition. Doc. 21. No reply was filed and the matter was taken under submission without oral argument. Doc. 29.

**I. History**

Plaintiffs in the case are Honor Plastic Industrial Co., Ltd. ("Honor Plastic") and P&P

---

[1] In the formal notice of the motion, Defendant states that it seeks change in venue under 28 U.S.C. §1404. Doc. 17, Notice, at 1:27. In the briefing, Defendant cites to 28 U.S.C. §1406 exclusively, and makes arguments that are inapplicable to 28 U.S.C. §1404. The court will only address change in venue under 28 U.S.C. §1406.

1

International, Inc. ("P&P").  Honor Plastic is a Taiwanese company that manufactures and markets a variety of products.  For the U.S. market, Honor Plastic marketed plastic cups and lids with distinctive marks on them starting in 2004.  The first mark to be used showed the word "Honor" capitalized with cup silhouettes forming the middle of the "o"s and with curved arrows above and below, forming a circle ("Silhouette Mark").  Honor Plastic filed an application with the U.S. Patent and Trademark Office for this mark on June 30, 2004.  The trademark (Registration No. 2,976,261) was issued on July 26, 2005.  The second mark used is identical to the Silhouette Mark, but omits the cup silhouettes in the middle of the "o"s ("Honor Mark").  Honor Plastic file an application with the U.S. Patent and Trademark Office for the Honor Mark on August 15, 2005 (Application No. 78693049).  The application is still under review.

      Honor Plastic originally distributed products bearing the Silhouette Mark through CTT International, Inc. and Bubble & Crepe in the U.S.  On January 1, 2005, Honor Plastic signed or endorsed a contract ("Original Agreement") with Taijoint, Inc. ("Taijoint"), another Taiwan company, for Taijoint to be Honor Plastic's exclusive distributor in the U.S. Doc. 15, Ex. A.  Defendant Lollicup USA, Inc. ("Lollicup") is a U.S. subsidiary of Taijoint based in Los Angeles, CA.  Honor Plastic began distributing plastic cups and lids bearing the Honor Mark in addition to the Sihouette Mark in 2005 through Lollicup.  In the fall of 2005, Honor Plastic and Lollicup sued and were sued by the Solo Cup Co. over the use of cup silhouettes.  On June 8, 2006, Honor Plastic entered into a settlement with the Solo Cup Co. whereby Honor Plastics agreed to discontinue use of any cup silhouettes in its trademarks, essentially giving up the Silhouette Mark while retaining the use of the Honor Mark. Doc. 22, Ex. B. Harris Declaration.  On November 17, 2005, Honor Plastic and Taijoint entered into a nonexclusive distribution contract ("Amended Agreement") which superceded the Original Agreement. Doc. 15, Ex. B.  The relationship unraveled soon thereafter.

      Honor Plastic terminated the Amended Agreement with Taijoint and ultimately selected P&P, based in Selma, CA, to be its new distributor in the U.S.  Lollicup registered "Honor USA" as a service mark (Registration No. 61,563) and the Honor Mark as a trademark (Registration No. 00111367) with the State of California on January 4, 2006.  In late May-early June, Lollicup

sent letters to Honor Plastic, P&P, and Plast Techs Enterprises ("Plast Techs," a P&P client) demanding that they cease and desist from selling products bearing the Honor Mark.

Lollicup filed suit against P&P and Plast Techs in the Los Angeles Superior Court on various causes of action related to trademark infringement ("State Suit"). The complaint was dated June 4, 2006 but was not filed with the clerk's office until June 8, 2006. Meanwhile, Honor Plastic and P&P filed the present suit against Lollicup for trademark infringement in Fresno on June 6, 2006. The operative complaint is the First Amended Complaint Doc. 15. In pertinent part, Plaintiffs allege trademark infringement under federal and California law and interference with a contractual relationship under California law. They seek monetary damages, declaratory relief, and to have Defendant's California trademark and service mark registrations cancelled.

## II. Legal Standards

**A. Venue**

Federal Rule of Civil Procedure 12(b)(3) permits a defendant to move for dismissal of the case on the basis of improper venue. Title 28 U.S.C. §1391 is the general code section governing venue. "A civil action wherein jurisdiction is not founded solely on diversity of citizenship may, except as otherwise provided by law, be brought only in (1) a judicial district where any defendant resides, if all defendants reside in the same State, (2) a judicial district in which a substantial part of the events or omissions giving rise to the claim occurred, or a substantial part of property that is the subject of the action is situated, or (3) a judicial district in which any defendant may be found, if there is no district in which the action may otherwise be brought." 28 U.S.C. §1391(b). "[A] defendant that is a corporation shall be deemed to reside in any judicial district in which it is subject to personal jurisdiction at the time the action is commenced. In a State which has more than one judicial district and in which a defendant that is a corporation is subject to personal jurisdiction at the time an action is commenced, such corporation shall be deemed to reside in any district in that State within which its contacts would be sufficient to subject it to personal jurisdiction if that district were a separate State, and, if there is no such

3

district, the corporation shall be deemed to reside in the district within which it has the most significant contacts." 28 U.S.C. §1391(c).

"Plaintiff has the burden of proving that venue is proper in the district in which the suit was initiated." Hope v. Otis Elevator Co., 389 F. Supp. 2d 1235, 1243 (E.D. Cal. 2005), citing Airola v. King, 505 F. Supp. 30, 31 (D. Ariz. 1980); see also Piedmont Label Co. v. Sun Garden Packing Co., 598 F.2d 491, 496 (9th Cir. 1979); Bohara v. Backus Hosp. Med. Ben. Plan, 390 F. Supp. 2d 957, 960 (C.D. Cal. 2005); Flamingo Indus. (U.S.A.), Ltd. v. United States Postal Serv., 2004 U.S. Dist. LEXIS 17530, *6 (N.D. Cal. Aug. 23, 2004).  In deciding a Fed. R. Civ. Proc. 12(b)(3) motion, a court may consider facts outside the pleadings and need not accept the pleadings as true. Murphy v. Schneider Nat'l, Inc., 362 F.3d 1133, 1137 (9th Cir. 2004).  If there are contested factual issues, the court is obligated to draw all reasonable inferences and resolve the factual conflicts in favor of the non-moving party or hold a pre-trial evidentiary hearing on the disputed facts. Murphy v. Schneider Nat'l, Inc., 362 F.3d 1133, 1138-9 (9th Cir. 2004).

**B. Personal Jurisdiction**

In the absence of specific statutory provision, federal courts apply the personal jurisdiction laws of the state in which they are situated. See T.M. Hylwa, M.D., Inc. v. Palka, 823 F.2d 310, 312 (9th Cir. 1987).  Pursuant to Cal. Civ. Proc. Code § 410.10, California's long-arm statute reaches as far as the Due Process Clause permits.  "Since California's jurisdictional statute is coextensive with federal due process requirements, the jurisdictional inquiries under state law and federal due process merge into one analysis." Roth v. Garcia Marquez, 942 F.2d 617, 620 (9th Cir. 1991).  "We are not bound by state cases, although they may be considered persuasive authority." Data Disc, Inc. v. Systems Technology Associates, Inc., 557 F.2d 1280, 1286 n.3 (9th Cir. 1977). "A state may exercise either general or specific jurisdiction over a defendant. If a defendant's activities within the forum state are 'continuous and systematic' or 'substantial,' the state has a sufficient relationship with the defendant to assert general jurisdiction. If, however, a forum state cannot assert general jurisdiction over the defendant, it may still assert specific jurisdiction depending on the quality and nature of the defendant's

contacts with the forum state in relation to the cause of action." <u>Lake v. Lake</u>, 817 F.2d 1416, 1420-21 (9th Cir. 1987). "To the extent that a corporation exercises the privilege of conducting activities within a state, it enjoys the benefits and protection of the laws of that state. The exercise of that privilege may give rise to obligations; and, so far as those obligations arise out of or are connected with the activities within the state, a procedure which requires the corporation to respond to a suit brought to enforce them can, in most instances, hardly be said to be undue." <u>International Shoe Co. v. State of Wash.</u>, 326 U.S. 310, 319 (1945).

**1. General Jurisdiction**

> A defendant whose contacts with a state are "substantial" or "continuous and systematic" can be haled into court in that state in any action, even if the action is unrelated to those contacts....The standard for establishing general jurisdiction is fairly high, and requires that the defendant's contacts be of the sort that approximate physical presence. Factors to be taken into consideration are whether the defendant makes sales, solicits or engages in business in the state, serves the state's markets, designates an agent for service of process, holds a license, or is incorporated there.

<u>Bancroft & Masters, Inc. v. Augusta Nat. Inc.</u>, 223 F.3d 1082, 1086 (9th Cir. 2000), citing <u>Helicopteros Nacionales de Colombia, S.A. v. Hall</u>, 466 U.S. 408, 415 (1984). In addition to contacts in general, assertion of personal jurisdiction must be reasonable. <u>Amoco Egypt Oil Co. v. Leonis Navigation Co.</u>, 1 F.3d 848, 851 n.2 (9th Cir. 1993).

**2. Specific Jurisdiction**

For specific jurisdiction, there is a three part test: "1) the nonresident defendant must have purposefully availed himself of the privilege of conducting activities in the forum by some affirmative act or conduct; 2) plaintiff's claim must arise out of or result from the defendant's forum-related activities; and 3) exercise of jurisdiction must be reasonable." <u>Roth v. Garcia Marquez</u>, 942 F.2d 617, 620-21 (9th Cir. 1991). "When a court is exercising specific jurisdiction over a defendant, arising out of or related to the defendant's contacts with the forum, the fair warning that due process requires arises not at the time of the suit, but when the events that gave rise to the suit occurred." <u>Steel v. United States</u>, 813 F.2d 1545, 1549 (9th Cir. 1987), citations omitted. [W]e consider the extent of the defendant's contacts with the forum and the degree to

which the plaintiff's suit is related to those contacts. A strong showing on one axis will permit a lesser showing on the other." Yahoo! Inc. v. La Ligue Contre Le Racisme, 433 F.3d 1199, 1210 (9th Cir. 2006).

"The purposeful availment standard requires more than foreseeability of causing injury in another state. Rather, the foreseeability that is critical to due process analysis is that the defendant's conduct and connection with the forum State are such that he should reasonably anticipate being haled into court there. The purposeful availment prong prevents defendants from being haled into a jurisdiction through random, fortuitous, or attenuated contacts." Terracom v. Valley Nat'l Bank, 49 F.3d 555, 560 (9th Cir. 1995). "[O]rdinarily use of the mails, telephone, or other international communications simply do not qualify as purposeful activity invoking the benefits and protection of the forum state." Peterson v. Kennedy, 771 F.2d 1244, 1262 (9th Cir. 1985), citations omitted. The second prong requires that the contacts relied on for personal jurisdiction actually relate to the cause of action. MGM Studios Inc. v. Grokster, Ltd., 243 F. Supp. 2d 1073, 1085 (C.D. Cal. 2003) ("Contacts with a forum state are relevant for purposes of specific jurisdiction only if they are sufficiently related to the cause of action.....Thus, if Plaintiffs' claims would have arisen notwithstanding certain contacts, those contacts are not relevant to the jurisdictional analysis."). "But for" causation is all that is required since "A restrictive reading of the 'arising out of' requirement is not necessary in order to protect potential defendants from unreasonable assertions of jurisdiction." Shute v. Carnival Cruise Lines, 897 F.2d 377, 385 (9th Cir. 1990), rev'd on other grounds, 499 U.S. 585 (1991). Once a court has found purposeful availment, the reasonableness of jurisdiction is presumed. Sher v. Johnson, 911 F.2d 1357, 1364 (9th Cir. 1990). The burden is then shifted to the defendant to show "the presence of some other considerations would render jurisdiction unreasonable." Burger King Corp. v. Rudzewicz, 471 U.S. 462, 477 (1985).

**3. Reasonableness**

Reasonableness is a requirement for both general and specific jurisdiction. "The Supreme Court has bifurcated this due process determination into two inquiries, requiring, first, that the

defendant have the requisite contacts with the forum state to render it subject to the forum's jurisdiction, and second, that the assertion of jurisdiction be reasonable." Amoco Egypt Oil Co. v. Leonis Navigation Co., 1 F.3d 848, 851 (9th Cir. 1993). In determining whether the exercise of jurisdiction comports with "fair play and substantial justice," and is therefore "reasonable," courts are to consider seven factors:

> (1) the extent of the defendants' purposeful injection into the forum state's affairs; (2) the burden on the defendant of defending in the forum; (3) the extent of conflict with the sovereignty of the defendant's state; (4) the forum state's interest in adjudicating the dispute; (5) the most efficient judicial resolution of the controversy; (6) the importance of the forum to the plaintiff's interest in convenient and effective relief; and (7) the existence of an alternative forum.

Dole Food Co. v. Watts, 303 F.3d 1104, 1114 (9th Cir. 2002); FDIC v. British-American Ins. Co., 828 F.2d 1439, 1442 (9th Cir. 1987).

Notwithstanding the formal general and specific jurisdiction requirements, the Ninth Circuit has stated that a more "flexible approach" may be appropriate. "Jurisdiction may be established with a lesser showing of minimum contacts if considerations of reasonableness dictate. Under this analysis, there will be cases in which the defendant has not purposefully directed its activities at the forum state, but has created sufficient contacts to allow the state to exercise personal jurisdiction if such exercise is sufficiently reasonable." Ochoa v. J.B. Martin & Sons Farms, 287 F.3d 1182, 1189 n.2 (9th Cir. 2002). Overall, "Questions of personal jurisdiction admit of no simple solutions and that ultimately due process issues of reasonableness and fairness must be decided on a case-by-case basis." Wells Fargo & Co. v. Wells Fargo Express Co., 556 F.2d 406, 426 (9th Cir. 1977), quoting Perkins v. Benguet Consol. Mining Co., 342 U.S. 437, 445 (1952).

### III. Discussion

Defendant seeks dismissal under Fed. R. Civ. Proc. 12(b)(3) or, in the alternative, transfer pursuant to 28 U.S.C. §1406. Both requests are dependent upon a finding that venue is improper in the Eastern District. To substantiate venue, Plaintiffs rely on 28 U.S.C. §1391(b) and (c), claiming Defendant resides in the Eastern District and a substantial part of the events giving rise to the claim occurred here. Doc. 21, Opposition, at 6:9-20.

**A. Corporate Residence**

Title 28 U.S.C. §1391(c) says any corporate defendant "shall be deemed to reside in any judicial district in which it is subject to personal jurisdiction at the time the action is commenced." This effectively turns the venue question into a personal jurisdiction analysis, treating the Eastern District of California as a state. Plaintiffs claim Defendant has sufficient contacts with the Eastern District for both general and specific personal jurisdiction. Doc. 21, Opposition, at 7:5-6.

**1. Asserted Facts**

Defendant states that it "is not doing business in the Eastern District of California, has no offices in the Eastern District of California, and has no employees in the Eastern District of California." Doc. 17, Brief, at 5:3-6. Plaintiffs have provided several declarations in opposition that point out the following facts.

Defendant's attorney has sent out cease and desist letters to P&P and Plast Techs, saying Defendant "advertises and promotes disposable table ware, paper and plastic cups, and paper and plastic plates, throughout California and the western United States, bearing [the Honor Mark]." Doc. 22, Ex. B, May 25, 2006 Letter. In the State Suit, Defendant says its "services have been, and are, extensively advertised, publicized, and sold throughout the State of California, including Los Angeles County under its service mark. By virtue thereof, together with consumer acceptance and recognition of the service mark 'Honor,' [Defendant's] mark identifies [Defendant's] services only, and distinguishes them from those of others." Doc. 22, Ex. A, State Suit Complaint, at 3:6-11.

Defendant's website indicates there are twelve Lollicup Coffee & Tea stores (termed "trademark licensees") in the Sacramento area, though the company notes that they are

"independently owned an operated."[2]  The licensed trademark or service mark appears to be "Lollicup" and not "Honor."  These trademark licensees pay Defendant a fixed sum of $8,000 for a two year term and an initial $2,000 training fee; there are no additional payments based on revenues.  Defendant does not determine the trademark licensees' menus or direct that they purchase Defendant's products.  The website also lists a regional distributor of Defendant's products in the Sacramento area (for wholesale of Defendant's products), but notes "all regional distributors are independent contractors."[3]

The website is interactive and allows for online purchase of Defendant's products.  With reference to cups, Defendant states "Honor USA® Inc. is a disposable plastic and paper cup supplier....Honor USA® cups are compatible to known brands manufactured by other plastic cup suppliers....Honor® is a registered logo, USPTO registration # 2976261."[4]  Items bearing the "Honor" logo are available for purchase.[5]  On August 4, 2006, Robert Stephenson (whose relationship with Plaintiffs is uncertain) ordered "Honor" branded products online for delivery to Fresno; the products were received August 8, 2006. Doc. 23, Ex. 3, Stephenson Declaration.  Plaintiffs have not made any assertions regarding the overall volume of online sales to the Eastern District.

**2. General Personal Jurisdiction**

Plaintiffs cite to Gator.com Corp. v. L.L. Bean, Inc., 341 F.3d 1072 (9th Cir. 2003) for the proposition that "an interactive web site that operates as a virtual store subjects the operator of

---

[2] http://www.lollicup.com/main.cfm?tm=storelocation.htm&side=store.cfm&id=storelocations&page=storelocation.cfm (August 18, 2006)

[3] http://www.lollicup.com/main.cfm?tm=regional_dist.htm&side=store.cfm&id=regional&page=regional_dist.cfm (August 18, 2006)

[4] http://www.lollicupstore.com/0606/store-supplies-cups.html (August 18, 2006).  The U.S. Patent and Trademark Office Registration No. 2976261 mentioned refers to the Silhouette Mark.

[5] http://www.lollicupstore.com/0606/hohotcupsili1.html (August 18, 2006)

that web site to personal jurisdiction in a district to where the web site is directed." claiming that it was "vacated on other grounds." Doc. 21, Opposition, at 8:14-19.  In that case, a three-judge Ninth Circuit panel reversed a district court's conclusion that there was no general jurisdiction despite the fact that the defendant sold millions of dollars worth of products to California residents through their website. Gator.com Corp. v. L.L. Bean, Inc., 341 F.3d 1072, 1074 and 1080 (9th Cir. 2003).  Examination of the subsequent history of the case shows that it was vacated and taken en banc on April 29, 2004 with the admonition, "The three-judge panel opinion shall not be cited as precedent by or to this court or any district court of the Ninth Circuit, except to the extent adopted by the en banc court." Gator.com Corp. v. L.L. Bean, Inc., 366 F.3d 789 (9th Cir. 2004).  Subsequently, the parties notified the court of settlement on September 1, 2004 which lead the en banc majority to find the appeal moot and specifically state "we must await another opportunity to resolve the important issues of personal jurisdiction originally raised by this appeal." Gator.com Corp. v. L.L. Bean, Inc., 398 F.3d 1125, 1132 (9th Cir. 2005).  The dissent argued the court should reach the merits of the case, but agreed that the three-judge panel decision "no longer has the force of law." Gator.com Corp. v. L.L. Bean, Inc., 398 F.3d 1125, 1143 (9th Cir. 2005), dissent.  The court must conclude the original decision in Gator.com Corp. v. L.L. Bean, Inc., 341 F.3d 1072 (9th Cir. 2003) is not precedent and may not be cited as binding authority.

Regardless, the possibility that a significant volume of sales to a state's residents through a defendant's website store can constitute the basis of general jurisdiction must be examined. "[T]he most reliable indicator of the nature and extent of defendant's Internet contact with the forum state will be the amount of sales generated in the state by or through the interactive website. In addition, it may also be possible to determine how many times a website has been accessed by residents or businesses located in a specific state." Coastal Video Communs. Corp. v. Staywell Corp., 59 F. Supp. 2d 562, 572 (E.D. Va. 1999).  Plaintiffs have not provided any documentation as to the level or number of Defendant's online sales in the Eastern District.  In another case, online sales of $754.42 over a two year period were deemed insufficient. Io Group, Inc. v. Pivotal, Inc., 70 U.S.P.Q.2d 1458, 1462 (N.D. Cal. 2004) ("While defendants entered into

contracts with several California corporations, received $ 754.42 from purchases made by California residents, and used a server located in California, [plaintiff] has not alleged sufficient facts to demonstrate that these contacts were either 'substantial' or 'continuous and systematic'"). As Plaintiffs have only demonstrated one sale for a total value of $70.50 (Doc. 23, Stephenson Declaration), jurisdiction cannot be established solely on the basis of online sales.

In looking at the twelve Lollicup Coffee & Tea Stores, the court notes that they are not traditional franchisees. These trademark licensees pay a fixed fee for the use of the "Lollicup" name (approximately $48,000 per year total) but do not pay any proportion of their revenues to Defendant (as would be expected from a more traditional franchisor-franchisee relationship). Having licensees in a state does not automatically give rise to general jurisdiction. Bancroft & Masters, Inc. v. Augusta Nat'l, Inc., 223 F.3d 1082, 1086 (9th Cir. 2000) ("[The defendant] continues to have license agreements with two television networks and a handful of California vendors. These agreements constitute doing business with California, but do not constitute doing business in California. This is because engaging in commerce with residents of the forum state is not in and of itself the kind of activity that approximates physical presence within the state's borders"). The financial relationship with the regional distributor is unknown but it may be more akin to that of a traditional franchise. While this type of relationship is significant, it does not automatically give rise to general personal jurisdiction, especially when the franchisor's website notes that the franchisee is independently owned and operated. Rascon v. Checkcare Enters., 2006 U.S. Dist. LEXIS 56433, *6-7 (N.D. Cal. 2006).

General jurisdiction only exists when a "defendant's contacts be of the sort that approximate physical presence." Bancroft & Masters, Inc. v. Augusta Nat. Inc., 223 F.3d 1082, 1086 (9th Cir. 2000). The various contacts, collectively, do not rise to this standard.

**3. Specific Personal Jurisdiction**

Specific jurisdiction has three requirements: "1) the nonresident defendant must have purposefully availed himself of the privilege of conducting activities in the forum by some affirmative act or conduct; 2) plaintiff's claim must arise out of or result from the defendant's

forum-related activities; and 3) exercise of jurisdiction must be reasonable." Roth v. Garcia Marquez, 942 F.2d 617, 620-21 (9th Cir. 1991).  For claims sounding in tort, "personal jurisdiction can be predicated on (1) intentional actions (2) expressly aimed at the forum state (3) causing harm, the brunt of which is suffered - and which the defendant knows is likely to be suffered - in the forum state," under the "effects test" of Calder v. Jones, 465 U.S. 783 (1984). Core-Vent Corp. v. Nobel Indus. AB, 11 F.3d 1482, 1486 (9th Cir. 1993)

Among Defendant's Eastern District related activities, Defendant has sent a cease and desist letter to P&P, which has its principal place of business in Selma, and has filed suit against P&P for trademark infringement.  The scenario is akin to that covered in Bancroft.

> Until recently, NSI was the sole registrar of domain names in the United States, under an exclusive contract with the U.S. government. [Plaintiff] alleges that sometime in late 1997, [defendant] sent a letter to NSI's Virginia headquarters challenging [plaintiff's] use of the domain name masters.com. [Defendant] also sent a letter to [plaintiff] in California demanding that [plaintiff] cease and desist its use of masters.com and transfer it immediately to [defendant]. [Defendant's] letter to NSI triggered NSI's then-applicable dispute resolution policy. Under this policy, [plaintiff] had three options: (1) voluntarily transfer the masters.com domain name to [defendant]; (2) allow the domain name to be placed "on hold," meaning that it could not be used by either party; or (3) obtain a declaratory judgment establishing its right to use the masters.com domain name. Rather than give up its website, [plaintiff] chose the third option....we conclude that [plaintiff] has demonstrated purposeful availment by [defendant] under the Calder effects test. [Defendant] acted intentionally when it sent its letter to NSI. The letter was expressly aimed at California because it individually targeted [plaintiff], a California corporation doing business almost exclusively in California. Finally, the effects of the letter were primarily felt, as [defendant] knew they would be, in California.

Bancroft & Masters, Inc. v. Augusta Nat'l, Inc., 223 F.3d 1082, 1084-8 (9th Cir. 2000).  The Ninth Circuit highlighted similar logic in approving of the Seventh Circuit decision in Indianapolis Colts, Inc. v. Metropolitan Baltimore Football Club Ltd. Partnership, 34 F.3d 410 (7th Cir. 1994):

> There, the Indianapolis Colts brought a trademark infringement action in the district court in Indiana against the Canadian Football League's new team, the "Baltimore CFL Colts." The Seventh Circuit held that the Baltimore CFL Colts team was subject to personal jurisdiction in Indiana even though its only activity directed toward Indiana was the broadcast of its games on nationwide cable television. Because the Indianapolis Colts used their trademarks in Indiana, any infringement of those marks would create an injury which would be felt mainly in Indiana, and this, coupled with the defendant's "entry" into the state by the television broadcasts, was sufficient for the exercise of personal jurisdiction.

Panavision Int'l, L.P. v. Toeppen, 141 F.3d 1316, 1321-1322 (9th Cir. 1998).  Defendant has admitted to advertising, promoting, and selling products using the Honor and/or Silhouette Marks

throughout California.  As P&P is based in Selma, Defendant clearly knew that the injury would particularly be felt in the Eastern District.

       Defendant has the burden of demonstrating that exercise of personal jurisdiction in the Eastern District is unreasonable.  Burger King Corp. v. Rudzewicz, 471 U.S. 462, 477 (1985).  Defendant has made no such argument.  Given the facts of the case, jurisdiction is eminently reasonable as Defendant has essentially boasted of its business expansion throughout California.  Given the relatively close distance between Fresno and Los Angeles, any burden in defending in this forum is minimal.  Indeed, the court notes that Defendant's attorney in this case is the same attorney representing Defendant in the state court proceeding.  There is no conflict over state sovereignty or competing interests between forums.  Specific personal jurisdiction in the Eastern District is proper.

**B. Substantial Part Of The Events Giving Rise To The Claim**

       Plaintiffs also argue, in the alternative, that venue is proper based on 28 U.S.C. §1391(b)(2).  As the court has found venue proper based on 28 U.S.C. §1391(b)(1), the alternative argument need not be reached.

### IV. Order

       Defendant's motion for dismissal pursuant to Fed. R. Civ. Proc. 12(b)(3), improper venue, or, in the alternative for transfer under 28 U.S.C. §1406 to the Central District of California is DENIED.

IT IS SO ORDERED.

**Dated:   September 26, 2006**                 /s/ Anthony W. Ishii
0m8i78                                      UNITED STATES DISTRICT JUDGE