UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| **HONOR PLASTIC INDUSTRIAL CO. LTD and P&P INTERNATIONAL INC.,**    )<br>    )<br>    **Plaintiffs**,    )<br>    )<br>    v.    )<br>    )<br>**LOLLICUP USA, INC.,**    )<br>    )<br>    **Defendant**.    )<br>_____)  | CIV-F-06-0707 AWI DLB<br><br>**ORDER RE: PRELIMINARY INJUNCTION**<br><br><br>(Docs. 31 and 65) |

   Plaintiffs have moved for a preliminary injunction prohibiting Defendant from using several trademarks. Defendant opposed the motion. Oral argument was held on October 25, 2006. For the following reasons, the Plaintiffs' motion is granted.

**I. History**

   Plaintiffs in the case are Honor Plastic Industrial Co., Ltd.[1] ("Honor Plastic") and P&P

---

[1]Honor Plastic's original name is in Chinese. Though a more direct translation might use the term "prosperity" instead of "honor," the company has called itself Honor Plastic Industrial Co., Ltd. in English documents since April 2004 at the latest. Doc. 33, Exs. D and E. Honor Plastic also sold product to customers in California under the Honor Plastic name as early as September 2004. Doc. 33, Exs. H and I. In its papers, Lollicup refers to Honor Plastic as Rong-Chin, a transliteration of the Chinese name. Nevertheless, as Honor Plastic has submitted

1

International, Inc. ("P&P"). Honor Plastic is a Taiwanese company that manufactures a variety of products. For the U.S. market, Honor Plastic made plastic cups and lids with distinctive marks on them starting in 2004. The first mark to be used showed the word "Honor" capitalized with cup silhouettes forming the middle of the "o"s and with curved arrows above and below, forming a circle ("Silhouette Mark"). Honor Plastic filed an application with the U.S. Patent and Trademark Office for this mark on June 30, 2004. The application indicated that the Silhouette Mark was first used in commerce on June 25, 2004. Doc. 34, Ex. O. The application was published for comment on May 3, 2005 and received no opposition. The trademark (Registration No. 2,976,261) was granted on July 26, 2005. The second mark used is identical to the Silhouette Mark, but omits the cup silhouettes in the middle of the "o"s ("Plain Mark"). Honor Plastic file an application with the U.S. Patent and Trademark Office for the Plain Mark on August 15, 2005 (Serial No. 78693049). The application is still under review and has not yet been published for comment. Honor Plastic asserts trademark rights in both the Silhouette and Plain Marks. Honor Plastic also asserts rights in the word "honor" itself in the context of plastic cup and related product branding and marketing ("Word Mark").

On April 17, 2004, Honor Plastic signed an agreement with CTT International, Inc. ("CTT") of Atlanta, GA which made CTT the exclusive distributor of Honor Plastic's products throughout the United States. One shipment of product was made, totaling $32,999 worth of goods. Doc. 33, Ex. D. The boxes in which the products were shipped in bore the Silhouette Mark and the words "HONOR USA."[2] Doc. 33, Ex. C. Notwithstanding the agreement with CTT, Honor Plastic directly sold a shipment of plastic cup related products with a value of $21,716 (bearing the Silhouette Mark) to Bubble & Crepe (formally named Honor Trading Company in the documents) of Pleasant Hill, CA in September 2004,. Doc. 33, Exs. G, H, I, and

---

letterhead, shipping documents, and other papers referring to itself as Honor Plastic Industrial Co, Ltd., that is the name that will be used.

[2]There is uncertainty as to whether "Honor USA" was a reference to Honor Plastic or to CTT. The boxes also bore the word "CTT" and a symbol that appears to be a graphical design signifying CTT.

J.  Honor Plastic terminated the agreement with CTT on December 31, 2004.

On January 1, 2005, Honor Plastic signed or endorsed a contract ("Original Agreement") with Taijoint, Inc. ("Taijoint"), another Taiwan company, for Taijoint to be Honor Plastic's exclusive agent for market development and sales in the U.S. market. Doc. 33, Ex. L (Chinese original) and Doc. 34, Ex. Q (English translation).  The Original Agreement specified that several of Taijoint's duties under the contract could be performed by Lollicup, Taijoint's "U.S. subsidiary company." Doc. 34, Ex. Q.[3]  In addition to selling plastic cup products, Lollicup also operates a boba tea shop and sells supplies to affiliated boba tea shops.  It appears that Lollicup first purchased Honor Plastic cup products for its own use in early 2004.[4]  The exact date on which Lollicup first sold Honor Plastic product to third parties is unclear; Lollicup claims to have begun those sales in August or September 2004 and to have held itself out as the original source of the goods. Doc. 50, Yu Declaration, at 2:14-25.  Lollicup filed a fictitious business name statement for "Honor America Inc." and "Honor USA Inc." in the County of Los Angeles sometime in February 2005. Doc. 50, Ex. A (no indication of date statement was on the form).  On that statement, Lollicup indicated that it has not yet begun to transact business under those names.  On November 17, 2005, Honor Plastic and Taijoint entered into a nonexclusive

---

[3]Honor Plastic says that the Original Agreement made Lollicup its exclusive distributor in the United States.  At oral argument on October 25, 2006, Lollicup's attorney said that Lollicup is not corporately affiliated with Taijoint.  The owner of Taijoint is the brother-in-law of a director-shareholder of Lollicup.  Furthermore, there is no ongoing contractual relationship between the two; Lollicup submits purchase orders to Taijoint for specific shipments of goods.  Notwithstanding these verbal assertions, the evidence suggests that Honor Plastic's characterization of the relationship is accurate.  In another suit where Lollicup and Honor Plastic were co-plaintiffs, the complaint stated, "Lollicup is the exclusive distribution agent of [Honor Plastic] and is authorized to distribute products under the 'Honor' trademark in the United States." Doc. 34, Ex. S, at 2:7-12.  As part of that litigation Alan Yu, Lollicup's president, stated on October 6, 2005, "That [Lollicup] is the exclusive distributor for [Honor Plastic] in the United States." Doc. 68, Ex. FF, Yu Declaration, at 1:22-24.  The court accepts Lollicup as Taijoint's subsidiary and considers Lollicup to be Honor Plastic's former exclusive distributor in the United States.

[4]Whether this sale was made directly to Lollicup by Honor Plastic or whether this was a sale made through CTT is not specified.

distribution contract ("Amended Agreement") which superceded the Original Agreement. Doc. 15, Ex. B. The Amended Agreement made no mention of Lollicup.

At an unspecified time in 2005 Honor Plastic began distributing plastic cups and lids bearing the Plain Mark in addition to the Silhouette Mark through Lollicup. As stated above, Honor Plastic applied for registration of the Plain Mark on August 15, 2005. On September 20, 2005, the Solo Cup Co. ("Solo") sued Honor Plastic and Lollicup for trademark infringement over the use of cup silhouettes in the Silhouette Mark. Honor Plastic and Lollicup countersued, and litigation ensued.[5] On June 8, 2006, Honor Plastic and Lollicup jointly entered into a settlement with Solo whereby Honor Plastics and Lollicup agreed to discontinue use of any cup silhouettes in its trademarks, essentially giving up the Silhouette Mark while retaining the use of the Plain Mark. Doc. 22, Ex. B. Harris Declaration.

Sometime in late 2005 or early 2006, Honor Plastic terminated the Amended Agreement with Taijoint and ultimately selected P&P, based in Selma, CA, to be its new distributor in the U.S. Lollicup registered "Honor USA" as a service mark (Registration No. 61,563) and the Plain Mark as a trademark (Registration No. 00111367) with the State of California on January 4, 2006.[6] In late May-early June, Lollicup sent letters to Honor Plastic, P&P, and Plast Techs Enterprises ("Plast Techs," a P&P client) demanding they cease and desist from selling products bearing the Plain Mark. Plaintiffs allege that Lollicup has recently begun manufacturing and selling plastic cups bearing the Plain Mark. In addition, Lollicup has been selling goods bearing the Plain Mark on its websites (www.lollicupstore.com and www.honorusa.com).

Honor Plastic and P&P filed the present suit against Lollicup for trademark infringement in Fresno on June 6, 2006. The operative complaint is the First Amended Complaint Doc. 15. In

---

[5] In that suit, it appears that Honor Plastic and Lollicup were jointly represented by Charles Farano, Lollicup's counsel in this suit. As no party has raised any issue with the representation, the court presumes that any conflict has been waived by Honor Plastic.

[6] Lollicup claims that it applied for the state trademark and service marks in January 2005. Doc. 51, Opposition, at 7:13; Doc. 50, Yu Declaration, at 8:3-5. However, the copies of those applications show that they were made on January 4, 2006. Doc. 34, Exs. U and V.

pertinent part, Plaintiffs allege trademark infringement under federal and California law and interference with a contractual relationship under California law.  They seek monetary damages, declaratory relief, and to have Lollicup's California trademark and service mark registrations cancelled.

Meanwhile, Lollicup filed suit against P&P and Plast Techs in the Los Angeles Superior Court on various causes of action related to trademark infringement.  The complaint was dated June 4, 2006 but was not filed with the clerk's office until June 8, 2006.  That court stayed that case on August 1, 2006.  Lollicup then filed suit in the Central District of California on August 16, 2006.  On October 19, 2006, Lollicup filed a cross claim against Honor Plastic, P&P, and Plast Techs in this suit for trademark infringement.

Plaintiffs seek a preliminary injunction preventing Lollicup from using any of the Trademarks in advertising or selling any a disposable cup related product.  Plaintiffs filed their motion on September 6, 2006, with hearing set for October 10, 2006..  Lollicup did not file a timely opposition and instead filed an ex parte application to continue the hearing on September 29, 2006.  The court transformed the scheduled hearing to one for a temporary restraining order.  On October 10, 2006, the hearing was held.  The court granted a temporary restraining order enjoining Lollicup from using the Plain Mark or any other confusingly similar mark subject to Honor Plastic's posting of a $25,000 bond.  Honor Plastic deposited the funds and the preliminary injunction hearing was reset for October 25, 2006.  Lollicup filed a timely opposition and Plaintiffs filed a timely reply.  Oral argument was held on that date.

## II. Legal Standards

Title 15 U.S.C. §1125(a)(1) states: "Any person who, on or in connection with any goods or services, or any container for goods, uses in commerce any word, term, name, symbol, or device, or any combination thereof, or any false designation of origin, false or misleading description of fact, or false or misleading representation of fact, which- (A) is likely to cause confusion, or to cause mistake, or to deceive as to the affiliation, connection, or association of such person with another person, or as to the origin, sponsorship, or approval of his or her goods,

services, or commercial activities by another person, or (B) in commercial advertising or promotion, misrepresents the nature, characteristics, qualities, or geographic origin of his or her or another person's goods, services, or commercial activities, shall be liable in a civil action by any person who believes that he or she is or is likely to be damaged by such act."

"A plaintiff is entitled to a preliminary injunction in a trademark case when it demonstrates either (1) a combination of 'probable success on the merits' and 'the possibility of irreparable injury' or (2) the existence of 'serious questions going to the merits' and that 'the balance of hardships tips sharply in his favor.'" GoTo.com, Inc. v. Walt Disney Co., 202 F.3d 1199, 1204-5 (9th Cir. 2000), quoting Sardi's Restaurant Corp. v. Sardie, 755 F.2d 719, 723 (9th Cir. 1985). With trademark suits, likelihood of confusion is the indispensible element. "[I]n order to show a probability of success in the causes of action for trademark infringement, false designation of origin and unfair competition, [parties] need show that a likelihood of confusion exists." Sardi's Restaurant Corp. v. Sardie, 755 F.2d 719, 723 (9th Cir. 1985), citations omitted. "[I]rreparable injury may be presumed from a showing of likelihood of success on the merits of a trademark infringement claim." Brookfield Communs., Inc. v. West Coast Entertainment Corp., 174 F.3d 1036, 1066 (9th Cir. 1999), citing Metro Publ'g, Ltd. v. San Jose Mercury News, 987 F.2d 637, 640 (9th Cir. 1993). "[A] plaintiff is therefore entitled to a preliminary injunction in a trademark case simply when it shows a likelihood of confusion." GoTo.com, Inc. v. Walt Disney Co., 202 F.3d 1199, 1205 (9th Cir. 2000). The same standard applies to registered and unregistered trademarks. See Brookfield Communs., Inc. v. West Coast Entertainment Corp., 174 F.3d 1036, 1046 n.6 (9th Cir. 1999).

### III. Discussion

In this motion Plaintiffs claim they can demonstrate probable success on the merits; Plaintiffs do not argue the alternative standard (case raises serious questions and the balance of hardships tips sharply in their favor).

**A. Trademarks in Question**

6

Plaintiffs assert protection in the Word Mark ("Honor") itself. "There are five categories of trademarks: (1) generic; (2) descriptive; (3) suggestive; (4) arbitrary; and (5) fanciful. The latter three categories are deemed inherently distinctive and are automatically entitled to protection because they naturally serve to identify a particular source of a product....A descriptive mark can receive trademark protection if it has acquired distinctiveness by establishing 'secondary meaning' in the marketplace." Yellow Cab Co. v. Yellow Cab of Elk Grove, Inc., 419 F.3d 925, 927 (9th Cir. 2005), citations omitted. The burden of proof is on Plaintiffs to establish that the Word Mark is subject to trademark protection, but Lollicup has not asserted that the Word Mark is generic or descriptive without secondary meaning. Lollicup has been doing business as Honor USA and has a website (www.honorusa.com). Granting a preliminary injunction as to the Word Mark would force Lollicup to give up the fictitious business name, restrict use of the website, and would prohibit Lollicup's use of the "Honor" brand in selling disposable cups and related products.

The relationship between the Silhouette and the Plain Marks must be clarified. The products which Lollicup are now selling bear the Plain Mark. Much of the evidence presented by Plaintiffs refers to sales of products bearing the Silhouette Mark. The Lanham Act deems a mark "abandoned," "[w]hen its use has been discontinued with intent not to resume such use. Intent not to resume may be inferred from circumstances. Nonuse for 3 consecutive years shall be prima facie evidence of abandonment. 'Use' of a mark means the bona fide use of such mark made in the ordinary course of trade, and not made merely to reserve a right in a mark." 15 U.S.C. §1127. Due to the settlement with Solo, Honor Plastic expressed its intent to abandon the Silhouette Mark. However, the Plain Mark must be seen as a variation of the Silhouette Mark. "Minor changes in a mark which do not change the basic, overall commercial impression created on buyers will not constitute any abandonment. So long as the owner continues use of the 'key element' of the registered mark, courts generally will not find abandonment." Sands, Taylor & Wood Co. v. Quaker Oats Co., 978 F.2d 947, 955 (7th Cir. 1992), quoting 1 J. Thomas McCarthy, Trademarks and Unfair Competition § 17:10, at 787 (2nd ed. 1984). The overall visual impression of the two marks is the same. The key element of both is the word "Honor" in

all caps. Cf. Forum Corp. of North America v. Forum, Ltd., 903 F.2d 434, 441 (7th Cir. 1990) (word "Forum" the key so changing between "The Forum Corporation of North America," "The Forum Corporation," and "The Forum" immaterial).  For the purposes of this analysis, the Plain Mark is considered a continuation and evolution of the Silhouette Mark.

**B. Ownership of the Trademarks**

"It is axiomatic in trademark law that the standard test of ownership is priority of use. To acquire ownership of a trademark it is not enough to have invented the mark first or even to have registered it first; the party claiming ownership must have been the first to actually use the mark in the sale of goods or services. When proving ownership of a trademark, federal registration of the mark is prima facie evidence that the registrant is the owner of the mark. Therefore, the registrant is granted a presumption of ownership, dating to the filing date of the application for federal registration, and the challenger must overcome this presumption by a preponderance of the evidence." Sengoku Works v. RMC Int'l, 96 F.3d 1217, 1219 (9th Cir. 1996), citations omitted.

**1. Use by Honor Plastic**

Honor Plastic filed an application with the U.S. Patent and Trademark Office for the Silhouette Mark on June 30, 2004, which was granted on July 26, 2005 (Registration No. 2,976,261).  Honor Plastic sold $32,999 worth of cups to CTT in April 2004 and $22,069.50 worth of cups and lids to Bubble & Crepe in September 2004. Doc. 33, Exs. D and J.  The general sales manager of Honor Plastic states that all of the cups and sleeves in which they were shipped were labeled with the Silhouette Mark. Doc. 33, Chang Declaration, at 3:11-12 and 4:4-5.  However, the principal register for the Silhouette Mark shows that it was first used on June 25, 2004. Doc. 34, Ex. O.  This evidence establishes that Honor Plastic owned and was using (selling products bearing) the Silhouette Mark in the United States as of June 2004.

Lollicup argues that Honor Plastic only had "single sales in two limited areas prior to [Lollicup's] marketing efforts." Doc. 51, Opposition, at 9:10-12.  That ignores the fact that CTT

8

was acting as a distributor of Honor Plastic's products in the overall U.S. market and presumably resold the goods to other parties.  Lollicup itself admits to having procured Honor Plastic products before August 2004.  This fact alone suggests that the goods had wider distribution than Lollicup has suggested.

Further, Lollicup seems to implicitly admit that Honor Plastic was the first company associated with the Word Mark in the disposable plastic cup business.  Lollicup says "By September 2004, Lollicup was getting orders from distributors for the [Honor Plastic] "Honor" product line..." Doc. 51, Opposition, at 4:25-26.  That is, in the minds of distributors, the products labeled "Honor" was already a distinct brand tied to Honor Plastic.

Lollicup also notes that Honor Plastic's application for the Silhouette Mark was unopposed. Doc. 51, Opposition, at 6:19-20.  The application was published for opposition on May 3, 2005.  Lollicup notes that it advertised product bearing the Trademarks at least "five months before [Honor Plastic's] trademark application was published." Doc. 50, Yu Declaration, at 11.  Yet, Lollicup chose not to oppose Honor Plastic's application when it was published.  Lollicup does not say that it was unaware of the application.  As stated above, once an application for trademark is granted, that party is presumed to have established ownership of the mark as of the filing date of the application. See Sengoku Works v. RMC Int'l, 96 F.3d 1217, 1219 (9th Cir. 1996).

**2. Use by Lollicup**

Lollicup has presented evidence of use of the Trademarks, but none of it predates Honor Plastic's use.  That is, Lollicup's initial use was simply distribution of Honor Plastic product.  Honor Plastic clearly says "[Honor Plastic] never sold its cup or lid products to [Taijoint] or [Lollicup] prior to August 2004." Doc. 67, Chang Declaration, at 2:16-17.  Lollicup's statement is ambiguous.  Alan Yu states, "In the early part of 2004, in view of the price and quality of the [Honor Plastic] product, I began to explore the possibility of selling the plastic cups that I was importing from [Honor Plastic] to the suppliers from which I was obtaining the plastic glasses and cups here in the United States.....Lollicup sales personnel began selling "Honor" products

throughout Southern California in August 2004, using the name "Honor." Doc. 50, Yu Declaration, at 2:14-25.  The text suggests that Lollicup had some access to Honor Plastic's products in early 2004, but did not sell those goods (use the Trademarks) until August 2004.

In February 2005, Lollicup filed a fictitious business name statement for "Honor America Inc." and "Honor USA Inc." in the County of Los Angeles.  On January 4, 2006, Lollicup filed a state trademark registration for the Plain Mark.  As part of the state registration, Alan Yu stated that the mark was first used on May 1, 2005. Doc. 34, Ex. U.

Lollicup argues that any prior use of the Trademarks by Honor Plastic would only grant limited rights to the Trademarks in "areas where prior use was substantial enough to create common-law rights." Doc. 51, Opposition, at 9:12-15.  However, all of the cases Lollicup cites to deal with parties who independently adopted a common trademark in good faith. See Adray v. Adry-Mart, Inc., 76 F.3d 984, 987 (9th Cir. 1995) (two electronics stores independently using "Adray" family name); Hanover Star Milling Co. v. Metcalf, 240 U.S. 403, 412 (1916) ("junior use adopted mark "in perfect good faith, with no knowledge that anybody else was using or had used those words in such a connection"); Natural Footwear, Ltd. v. Hart, Schaffner & Marx, 760 F.2d 1383, 1391 n.16 (3rd Cir. 1985) (junior user unaware for approximately four years that another company used the common mark).  As Honor Plastic points out, "In the ordinary case of parties competing under the same mark in the same market, it is correct to say that prior appropriation settles the question. But where two parties independently are employing the same mark upon goods of the same class, but in separate markets wholly remote the one from the other, the question of prior appropriation is legally insignificant, unless at least it appear that the second adopter has selected the mark with some design inimical to the interests of the first user, such as to take the benefit of the reputation of his goods, to forestall the extension of his trade, or the like." Hanover Star Milling Co. v. Metcalf, 240 U.S. 403, 415 (1916).  Here, with the distributor relationship between Honor Plastic and Lollicup, the court is not dealing with two parties independently employing the same mark in separate markets.

/ / /

/ / /

**3. Manufacturer v. Distributor**

Plaintiffs allege the relationship between Honor Plastic and Lollicup was that of manufacturer and distributor. Lollicup disputes that characterization, but its previous representations clearly indicate that it was Honor Plastic's distributor, acting as its agent in marketing and selling the Trademarked goods.

"When disputes arise between a manufacturer and distributor, courts will look first to any agreement between the parties regarding trademark rights. But in the absence of an agreement between the parties, the manufacturer is presumed to own the trademark. That presumption applies with equal force to cases involving foreign manufacturers." Sengoku Works v. RMC Int'l, 96 F.3d 1217, 1220 (9th Cir. 1996). Neither the Original Agreement nor the Amended Agreement directly discusses trademark rights. See Doc. 34, Exs. Q and R. The language of the Original Agreement does suggest that Honor Plastic sought to ensure that customers knew the Honor brand. Part of the agreements states, "[Honor Plastic] does not agree for its U.S. clients (including its distributors) to change the brand name "HONOR" imprinted at the bottoms of the container products in principle. However, if each order is more than 500, it will consider client requests to print other customized packaging designs with HONOR brand name included." Doc. 34, Ex. Q. In the suit against Solo, Mr. Yu declared under penalty of perjury that "the 'Honor' trademark has been assigned to [Lollicup]. A copy of said assignment is attached hereto and marked as Exhibit A." Doc. 68, Ex. FF, at 2:1-2. In fact, the "assignment" referred to is a Lollicup drafted text that Honor Plastic refused to sign. Doc. 67, Chang Declaration, at 2:19-20. The proposed agreement actually states, in relevant part,

> With the consent and approval of [Honor Plastic], [Lollicup] is given a license and is entitled to use the name "HONOR" and any logos, trademarks or tradenames that [Honor Plastic] has used or uses, in the past, now or in the future, to market, advertise, sell and distribute the Product in the Territory. If this Agreement is terminated, [Lollicup] shall be entitled to continue to use the name "HONOR" and any logos, trademarks and tradenames of [Honor Plastic] in order to sell or dispose of any inventory of the Product that is still in the possession of [Lollicup] at time of termination, otherwise [Lollicup] will cease to use the name "HONOR" and any logos, trademarks and tradenames of [Honor Plastic] after such termination.

Doc. 68, Ex. FF. Contrary to Mr. Yu's interpretation, the text suggests that Lollicup acknowledged the Trademarks belonged to Honor Plastic, reinforcing the implication of the

11

Original Agreement..

Lollicup argues that despite the relationship between the parties, Lollicup should prevail based on the precedent in a District of Nebraska case which granted trademark rights to the distributor, Wrist-Rocket Mfg. Co. v. Saunders, 379 F. Supp. 902 (D. Neb. 1974), affirmed in part and reversed in part by 516 F.2d 846.  In that case, a manufacturer and distributor came together and branded a product the "Wrist Rocket" (the mark whose ownership the parties dispute).  Before the agreement, the manufacturer had called the product "Howard's Wrist Locker Slingshot."  Importantly, "The evidence discloses that Ellenburg sold no slingshots under the name 'Wrist Rocket' after the name was developed by Saunders and before the first group was delivered to Saunders Archery Target Company in the late summer of 1954." Wrist-Rocket Mfg. Co. v. Saunders, 379 F. Supp. 902, 910 (D. Neb. 1974).  Wrist-Rocket is distinguishable as the Eighth Circuit explained, "This is not then a case where a distributor appropriates to its own use an existing trademark of the manufacturer. The issue here is who, as between the manufacturer and distributor, has ownership of a trademark created after the formation of the business relationship." Wrist-Rocket Mfg. Co. v. Saunders Archery Co., 516 F.2d 846, 850 (8th Cir. 1975).  In this case, the Trademarks were in use/created before Honor Plastic and Taijoint signed the distributorship agreement, or indeed before the two companies had contact in 2004.  Honor Plastic had sold product to CTT in April 2004.  The product was shipped in boxes that showed both the Silhouette Mark and the term "Honor USA."  Honor Plastic also made an application to the U.S. Patent and Trademark Office concerning the Silhouette Mark in June 2004.  The Trademarks were not something that were created in the course of Honor Plastic's and Lollicup's business relationship.

**B. Likelihood of Confusion**

"A plaintiff will succeed on the merits of its trademark infringement claim under the Lanham Act if it establishes that the defendant's use of its mark gives rise to a 'likelihood of confusion' in the consuming public. A likelihood of confusion exists when consumers are likely to assume that a product or service is associated with a source other than its actual source

because of similarities between the two sources' marks or marketing techniques. The Ninth Circuit has developed an eight-factor test to assess likelihood of confusion: 1) strength of the allegedly infringed mark; 2) proximity or relatedness of the goods; 3) similarity of the sight, sound, and meaning of the marks; 4) evidence of actual confusion; 5) degree to which the marketing channels converge; 6) type of goods and degree of care consumers are likely to exercise in purchasing them; 7) intent of the defendant in selecting the allegedly infringing mark; and 8) likelihood that the parties will expand their product lines." Metro Pub. v. San Jose Mercury News, 987 F.2d 637, 640 (9th Cir. 1993), citations omitted.  A trial court need not formally consider all of these factors at the preliminary injunction stage. Apple Computer, Inc. v. Formula International, Inc., 725 F.2d 521, 526 (9th Cir. 1984).

Taking factors two and three, it is undisputed that the marks used by Lollicup and Honor Plastic are identical (the Plain Mark) and affixed on the same type of products (plastic cups, lids, and packaging).  Notwithstanding the other factors, the Ninth Circuit has said it is clear error for a trial court to find no likelihood of confusion when two products with virtually identical marks are in the same market. Lindy Pen Co. v. Bic Pen Corp., 796 F.2d 254, 257 (9th Cir. 1986).  In addition, both sides agree that there is actual confusion in the market. Doc. 50, Yu Declaration, at 8:13-19; Doc. 32, Brief, at 26:25-27:1.

**C. Bond Amount**

Lollicup seeks a bond of $10 million if any preliminary injunction is granted, presumably based on its total estimated gross sales for the upcoming year.  Lollicup claims sales of hot and cold cups totaled $2.66 million in 2005 and $4.5 million thus far in 2006. Doc. 50, Yu Declaration, at 7:1-5.  However, Lollicup's own attached sales summary shows that sales of cups, glasses, and lids from April 2004 through August 2006 only totaled $2.70 million. Doc. 50, Ex. M.  At oral argument, Lollicup's attorney was directly asked about the discrepancy, but could provide no rational explanation for it.  These figures are contradictory and can not be relied on. The court is forced to use the evidence and financial figures provided by Honor Plastic in determining the proper bond amount.

The preliminary injunction does not oust Lollicup from the industry. It only prohibits Lollicup from using any of the Trademarks on the products it sells or in any advertisement. Lollicup is free to sell products that have no marks on them or to adopt a dissimilar mark as its own. The court must then estimate what amount of business Lollicup would lose under the new mark compared with its sales under its existing mark. See Russell v. Caesar, 2001 U.S. Dist. LEXIS 23679, *22 (N.D. Cal. 2001) (court must estimate amount of lost sales when winery forced to sell wine under new label). On its websites, Lollicup already sells equivalent products bearing other marks (Karat, Solo). See Doc. 68. Ex. Z. Customers might very well purchase these other products instead, greatly lessening any loss Lollicup might suffer. Honor Plastic claims that total sales to Lollicup to date total $1.97 million. Doc. 67, Chang Declaration, at 3:5-12. Based on those figures, Honor Plastic estimates that gross sales of Lollicup's Trademark bearing goods total approximately $84,923/month. Doc. 66, Reply, at 20:16-19. P&P asserts that the gross margin in the industry (distributing plastic cups and lids) averages 6-8%. Doc. 69, Spencer Declaration, at 2:7-11. So, net monthly profit on goods bearing the Trademarks is estimated at $5,095-$6,794. The court will infer that Lollicup might lose $2,000 a month in profit based on its inability to sell goods bearing the Trademarks. Assuming an 18 month interval until the case is resolved, a $36,000 bond is appropriate.

**D. Lollicup's Motion for Preliminary Injunction**

On October 19, 2006, Lollicup filed what it termed an "application for an ex part order enjoining cross-defendants from doing business under the name 'Honor' or 'Honor USA.'" Doc. 63, Notice. The court interprets this as a motion for preliminary injunction to prohibit Plaintiffs from using the Word Mark. The motion calls for relief diametrically in conflict with Plaintiffs' motion. As the court is granting Plaintiffs' motion, Lollicup's motion is denied.

### IV. Order

Pending further order of the court, it is hereby ORDERED that:

1. Defendant Lollicup, its officers, agents, servants, employees, representatives, partners,

and all persons acting in concert or participating with it are enjoined from using the Trademarks (namely the word "Honor" capitalized with curved arrows above and below, forming the impression of a circle and the word "Honor" itself as a brand) or any confusingly similar variation thereof printed on or in association with any disposable cup or related products that Lollicup distributes, imports, sells, manufactures, or otherwise promotes.  Defendant Lollicup is enjoined from representing itself as Honor USA; is enjoined from distributing literature, advertising, marketing material, or business cards bearing the name "Honor" in any format; and is enjoined from distributing products bearing the Trademarks.  Defendant Lollicup must cease use of the website (www.honorusa.com) unless there is an agreement with Plaintiffs as to its future operation.

2. Defendant Lollicup, its officers, agents, servants, employees, representatives, partners, and all persons acting in concert or participating with it be, and hereby are specifically enjoined from using the Trademarks or any confusingly similar variation thereof at tradeshows and are specifically enjoined from using a booth display bearing the name "Honor" in any format.

3. Defendant Lollicup, its officers, agents, servants, employees, representatives, partners, and all persons acting in concert or participating with it are required to, no later than November 15, 2006, segregate all products in their possession, custody, or control that bear any of the Trademarks or any confusingly similar variation thereof and destroy or store these products in a secure location.

4. Defendant Lollicup must file with the court and serve on Plaintiffs an affidavit setting forth in detail the manner and form in which Lollicup has complied with the terms of this injunction by 4 PM November 15, 2006.

This preliminary injunction shall take effect immediately on the condition that Plaintiffs file a bond in the sum of $36,000 within three (3) business days of entry of this order.  Upon posting this $36,000 bond, the temporary restraining order bond of $25,000 will be released.

IT IS SO ORDERED.

Dated:     November 3, 2006             /s/ Anthony W. Ishii
0m8i78                                  UNITED STATES DISTRICT JUDGE