**UNITED STATES DISTRICT COURT**

**EASTERN DISTRICT OF CALIFORNIA**

| | |
|---|---|
| **HONOR PLASTIC INDUSTRIAL CO. LTD and P&P INTERNATIONAL INC.,**<br><br>**Plaintiffs,**<br><br>**v.**<br><br>**LOLLICUP USA, INC.,**<br><br>**Defendant.** | **CIV-F-06-0707 AWI DLB**<br><br>**ORDER: DEFENDANT'S MOTION FOR RECONSIDERATION AND DISPOSITION OF THE DISPUTED WEBSITES** |

The matter before the court is Defendant's "motion for modification of order" and the disposition of certain websites that contain the word "honor." These matters were taken under submission without benefit of oral argument.

## I. History

Plaintiffs in the case are Honor Plastic Industrial Co., Ltd. and P&P International, Inc. (collectively "Plaintiffs"). Defendant is Lollicup USA, Inc. ("Lollicup") which also operates under the fictitious business name of Honor USA, Inc. As this is a reconsideration of a previous order, a detailed factual history will be dispensed with. All terminology follows that of the November 3, 2006 order granting a preliminary injunction. Doc. 79.

Plaintiffs filed a motion for a preliminary injunction seeking to enjoin Defendant from

using the Trademarks (the Silhouette Mark, the Plain Mark, and the Word Mark). A hearing was held on October 10, 2006. By written order (signed on October 10, 2006 but not filed until October 12, 2006), the court granted a temporary restraining order enjoining use of the Silhouette Mark and Plain Mark only and setting a further hearing on the motion for preliminary injunction. Doc. 49. The second hearing was held on October 25, 2006. By written order signed and dated November 3, 2006, Lollicup was enjoined from using all three Trademarks and ordered to segregate all products in their possession which bore the Trademarks. Doc. 79. Further, Lollicup was enjoined from representing itself as Honor USA, from using the term "Honor" in any marketing or advertising. Regarding the www.honorusa.com website, Lollicup was ordered to stop using it unless the parties could come to a mutually agreeable solution. The court set a hearing on December 4, 2006 to consider the disposition of the website should the parties fail to come to an agreement. Unfortunately, the parties have not come to any agreement on the matter and no determination was made on the hearing date. Lollicup has also filed a "motion for modification of order," asking the court to either change the terms of the preliminary injunction or to dissolve it. Doc. 82. The court construes it as a motion for reconsideration.

For the convenience of the parties, this order shall address both reconsideration and the websites. This revised preliminary injunction order supercedes all previous orders and spells out exactly what Defendant is enjoined from doing.

## II. Legal Standards

The court has discretion to reconsider and vacate a prior order. Barber v. Hawaii, 42 F.3d 1185, 1198 (9th Cir. 1994); United States v. Nutri-cology, Inc., 982 F.2d 394, 396 (9th Cir. 1992). Motions for reconsideration are disfavored, however, and are not the place for parties to make new arguments not raised in their original briefs. Northwest Acceptance Corp. v. Lynnwood Equip., Inc., 841 F.2d 918, 925-6 (9th Cir. 1988). Nor is reconsideration to be used to ask the court to rethink what it has already thought. United States v. Rezzonico, 32 F.Supp. 2d 1112, 1116 (D.Ariz.1998). "A party seeking reconsideration must show more than a disagreement with the Court's decision, and recapitulation of the cases and arguments considered

by the court before rendering its original decision fails to carry the moving party's burden." U.S. v. Westlands Water Dist., 134 F.Supp.2d 1111, 1131 (E.D. Cal. 2001). Motions to reconsider are committed to the discretion of the trial court. Combs v. Nick Garin Trucking, 825 F.2d 437, 441 (D.C. Cir. 1987); Rodgers v. Watt, 722 F.2d 456, 460 (9th Cir. 1983), en banc. To succeed, a party must set forth facts or law of a strongly convincing nature to induce the court to reverse its prior decision. See Kern-Tulare Water Dist. v. City of Bakersfield, 634 F.Supp. 656, 665 (E.D. Cal. 1986), affirmed in part and reversed in part on other grounds 828 F.2d 514 (9th Cir. 1987).

**III. Discussion**

Lollicup points out that "The district court has discretion to correct a judgment for mistake or inadvertence, either on the part of counsel or the court itself." Fid. Fed. Bank, FSB v. Durga Ma Corp., 387 F.3d 1021, 1024 (9th Cir. 2004), citing Kingvision Pay-Per-View Ltd. v. Lake Alice Bar, 168 F.3d 347, 350 (9th Cir. 1999). Plaintiffs are also correct in noting that "A party seeking modification or dissolution of an injunction bears the burden of establishing that a significant change in facts or law warrants revision or dissolution of the injunction." Sharp v. Weston, 233 F.3d 1166, 1170 (9th Cir. 2000). Here, Lollicup seeks to reargue a substantial part of the preliminary injunction motion dealing with the Word Mark apart from the Silhouette and Plain Marks. Lollicup has presented neither a change in law nor a change in facts. Review of the November 3, 2006 order shows that while the analysis contained therein covered all the Trademarks, the court did not always highlight how that analysis applied to the Word Mark specifically. To clarify, the court will discuss these issues explicitly.

"To prevail in a trademark infringement action, [a party] must establish that (1) it has valid, protectable trademarks or trade names, and (2) there is a likelihood of confusion as to the source or sponsorship of the products." Sun Microsystems v. SunRiver Corp., 1995 U.S. Dist. LEXIS 19008, *6 (N.D. Cal. 1995), citing Levi-Strauss & Co. v. Blue Bell, Inc., 778 F.2d 1352, 1354 (9th Cir. 1985), en banc. "A plaintiff is entitled to a preliminary injunction in a trademark case when it demonstrates either (1) a combination of 'probable success on the merits' and 'the possibility of irreparable injury' or (2) the existence of 'serious questions going to the merits' and

that 'the balance of hardships tips sharply in his favor.'" GoTo.com, Inc. v. Walt Disney Co., 202 F.3d 1199, 1204-5 (9th Cir. 2000), quoting Sardi's Restaurant Corp. v. Sardie, 755 F.2d 719, 723 (9th Cir. 1985). As mentioned in the November 3, 2006 order, Plaintiffs sought injunctive relief based on probable success on the merits and irreparable harm; Plaintiffs do not argue the alternative standard (case raises serious questions and the balance of hardships tips sharply in their favor). In this motion focusing on the Word Mark alone, Lollicup argues that 1) the Word Mark is generic and therefore non-protectable; 2) there is no likelihood of confusion; and 3) the balance of equities counsels modification to allow Lollicup to continue doing business as Honor USA or a drastic increase in bond amount.

**A. Protectability of the Word Mark**

"There are five categories of trademarks: (1) generic; (2) descriptive; (3) suggestive; (4) arbitrary; and (5) fanciful. The latter three categories are deemed inherently distinctive and are automatically entitled to protection because they naturally serve to identify a particular source of a product....A descriptive mark can receive trademark protection if it has acquired distinctiveness by establishing 'secondary meaning' in the marketplace." Yellow Cab Co. v. Yellow Cab of Elk Grove, Inc., 419 F.3d 925, 927 (9th Cir. 2005), citations omitted. The burden of proof is on Plaintiffs to establish that the Word Mark is subject to trademark protection. Lollicup says that the Word Mark is generic and merits no trademark protection. A generic term is one that is associated with all products of a class, indeed, that may define that class of products:

> If buyers understand the term as being identified with a particular producer's goods or services, it is not generic. But if the word is identified with all such goods or services, regardless of their suppliers, it is generic. We have often determined whether a mark is generic using the 'who-are-you/what-are-you' test: A mark answers the buyer's questions 'Who are you?' 'Where do you come from?' 'Who vouches for you?' But the generic name of the product answers the question 'What are you?'

Yellow Cab Co. v. Yellow Cab of Elk Grove, Inc., 419 F.3d 925, 929 (9th Cir. 2005) (pointing out that 'Filipino yellow pages' answered a 'What are you?' question). Here, the term 'honor' is not associated with disposable cup, glasses, or utensils. Indeed, Lollicup states that "Even the plaintiffs could not pretend that the word honor, in and of itself, would be connected with

disposable cups, glasses or utensils." Doc. 82, Brief, at 10:15-17. It is that very quality identified by Lollicup which makes the Word Mark not generic. Were "honor' a commonly used word intimately connected with disposable cups, glasses, or utensils in regular speech, trademark protection would be denied. As Plaintiffs argued in the briefing for the preliminary injunction, "'Honor' is a word in common usage, but - like 'Black & White' for scotch Whiskey, 'Live Wire' for film and television production, and 'Apple' for computers - as applied to plastic cups, it is arbitrary." Doc. 32, Brief, at 23:13-15. Ordinary words can be arbitrary. "SUN is an arbitrary mark because it does not describe computer products. The fact that sun is a word in common usage does not make the mark any less arbitrary. Common words are arbitrary as long as they do not describe the product with which they are used." Sun Microsystems v. SunRiver Corp., 1995 U.S. Dist. LEXIS 19008, *8 (N.D. Cal. 1995).

Plaintiffs point out Lollicup took the opposite position in their own motion for a TRO in which it sought "an ex parte order enjoining cross-defendants [Plaintiffs] from doing business under the name 'Honor' or 'Honor USA.'" Doc. 63, Notice, at 1:23-25. Plaintiffs say that "By asserting rights in Honor's Trademarks, Lollicup is conceding that Honor's trademarks are protectable and Lollicup cannot now argue that Honor's Trademarks are generic." Doc. 103, Opposition, at 6:24-26. While the switch in position does not inspire confidence in Lollicup's legal argument, it is not forbidden. Judicial estoppel generally requires that the earlier inconsistent position to have actually been relied on by a court as "Absent success in a prior proceeding, a party's later inconsistent position introduces no risk of inconsistent court determinations, and thus poses little threat to judicial integrity." New Hampshire v. Maine, 532 U.S. 742, 751 (2001), citations omitted.

**B. Ownership of the Word Mark**

"It is axiomatic in trademark law that the standard test of ownership is priority of use. To acquire ownership of a trademark it is not enough to have invented the mark first or even to have registered it first; the party claiming ownership must have been the first to actually use the mark in the sale of goods or services." Sengoku Works v. RMC Int'l, 96 F.3d 1217, 1219 (9th Cir.

1996), citations omitted. Plaintiffs did register the Silhouette Mark and filed an application for the Plain Mark. Regarding the Word Mark, they showed ownership through usage. Lollicup states that "This is a wholesale business." Doc. 82, Opposition, at 12:18-19. Thus, the customers are wholesale buyers and not the ultimate users of these disposable cups, glasses, or utensils.

From spring 2004, Plaintiffs have been selling disposable cups wholesale to buyers in the United States using the name Honor Plastic Industrial Co. Ltd. See Doc. 33, Exs. D through J. This use predates Lollicup's use of the name Honor USA which did not file a fictitious business name statement until February 2005. In this motion, Lollicup makes no argument challenging the ownership of the Word Mark.

**C. Likelihood of Confusion**

> A plaintiff will succeed on the merits of its trademark infringement claim under the Lanham Act if it establishes that the defendant's use of its mark gives rise to a 'likelihood of confusion' in the consuming public. A likelihood of confusion exists when consumers are likely to assume that a product or service is associated with a source other than its actual source because of similarities between the two sources' marks or marketing techniques. The Ninth Circuit has developed an eight-factor test to assess likelihood of confusion: 1) strength of the allegedly infringed mark; 2) proximity or relatedness of the goods; 3) similarity of the sight, sound, and meaning of the marks; 4) evidence of actual confusion; 5) degree to which the marketing channels converge; 6) type of goods and degree of care consumers are likely to exercise in purchasing them; 7) intent of the defendant in selecting the allegedly infringing mark; and 8) likelihood that the parties will expand their product lines.

Metro Pub. v. San Jose Mercury News, 987 F.2d 637, 640 (9th Cir. 1993), citations omitted. As stated in the November 3, 2006 order, notwithstanding the other six factors, the Ninth Circuit has said it is clear error for a trial court to find no likelihood of confusion when two products with virtually identical marks (factor three) are in the same market (factor two). Lindy Pen Co. v. Bic Pen Corp., 796 F.2d 254, 257 (9th Cir. 1986). With respect to these factors, Lollicup states:

> (2) Proximity of the Goods: Without a doubt, both parties seek to compete selling PET cups. LOLLICUP sells paper cups, straws and eating utensils as well. The market is the same.
>
> (3) Similarity of the marks: Defendant [Lollicup] offers no argument except to state that if it no longer uses the plaintiff's trademark [Plain Mark], there should be no issue. The generic word 'Honor' in and of itself is so generic it cannot be trademarked.

Doc. 82, Brief, at 11:27-12:5. Lollicup admits that both sides wish to use the identical term

"Honor" as a brand in the same market. Ninth Circuit precedent compels a finding of likelihood of confusion.

Mr. Yu says that "Currently, in my opinion, most of Lollicup's customers are aware of the current dispute between Lollicup USA, Inc. and Honor Plastic Industrial Co. Ltd. in that I, as the marketing manager of Lollicup, freely discuss the matter with them, and I inform them that Lollicup USA, Inc. does not distribute product with the 'Honor' logo or trademark, and that Lollicup USA, Inc. does not manufacture product which depicts the 'Honor' trademark..." Doc. 99, Yu Declarations, at 5:6-12. The universe of relevant consumers is not limited to current Lollicup customers, but to the broader class of wholesale purchasers of disposable cups, glasses, or utensils. Mr. Yu's statement itself recognizes that having two companies using the Word Mark and holding themselves out as "Honor" requires some explanation to clarify any confusion.

**D. Balance of Equities**

Lollicup starts its discussion under the title, "Balancing the interests as to the use of the word 'Honor.'" Doc. 82, Opposition, at 13:20-21. Under the law if Plaintiffs have shown irreparable harm (presumed in trademark cases) and a likelihood of success on the merits, a preliminary injunction is justified. Lolllicup makes two substantive arguments. First, Lollicup claims that the cost of complying with the preliminary injunction (through relabeling of preprinted boxes) would be approximately $50,000 and "the three-week delay will cost Lollicup more than $200,000.00 in gross profit, and may result in a loss of Lollicup's entire distribution business." Doc. 82, Opposition, at 14:15-25. Second, Lollicup urges the court to give precedence to the interests of a California corporation over than of a Taiwanese company with no employees or offices in the United States. Doc. 82, Opposition, at 15:1-12.

As to the first argument (which backs up Lollicup's request for a dramatic increase in the amount of bond), there is insufficient evidence to back up the claim. On November 8, 2006, Mr. Yu stated that "We now sell approximately $10,000.00 worth of products per month on this website." Doc. 84, Yu Declaration, at 3:6-7. Yet, on November 17, 2006, Mr. Yu represented that Lollicup "is currently receiving orders to ship product to its customers that amount to about

$100,000.00 per week." Doc. 99, Yu Declaration, at 6:8-9. These figures can only be reconciled by interpreting the first number to be internet sales on www.honorusa.com and the second figure ($400,000 per month) to be total sales including internet sales on www.lollicup.com. Regardless, the $100,000 per week claim is contradicted by Lollicup's own sales summary, which shows that sales of cups, glasses, and lids from April 2004 through August 2006 only totaled $2.70 million, an amount that averages to be $150,000 per month. Doc. 50, Ex. M. As noted before, Lollicup has consistently presented sales figures that contradict each other and has never given a convincing argument to explain these discrepancies. For example, on October 13, 2006 Lollicup claimed to be selling $200,000 per <u>week</u> on goods bearing the Plain Mark alone. Doc. 50, Yu Declaration, at 7:5-7. How that can be reconciled with the $2.70 million total sales of cups, glasses, and lids over a 17 month period is unexplained. The court reviews the latest instance of such contradiction. Lollicup claims that "the three-week delay will cost Lollicup more than $200,000.00 in gross profit, and may result in a loss of Lollicup's entire distribution business." Doc. 82, Opposition, at 14:15-25. Review of Mr. Yu's Declaration shows that Lollicup is instead assuming a six week delay based on sales of $100,000 per week and gross profit margins of 33.33% rather than a three week delay. Doc. 84, Yu Declaration, at 6:2-14. Lollicup claims a gross profit margin on website sales of 50% (which might support their three week-$200,000 gross profit loss claim) except that Lollicup has also said their website sales only total $10,000 per month. As to how its distribution business would be entirely lost, Lollicup makes no colorable argument. Indeed, Lollicup has noted that it has a relationship with most of its customers, who are sophisticated wholesale buyers, and they know about this legal dispute. How Lollicup would lose its distribution business if it were to present itself as simply "Lollicup" as opposed to "Honor USA" is not explained at all. At this point, the court can not fully rely upon the proffered data. In the prior preliminary injunction order, the $36,000 bond amount was determined to be reasonable, covering the amount of lost profit over 18 months. Nothing has changed that conclusion.

As to the second argument, this is not a motion for personal jurisdiction, choice of law, or forum non conveniens in which the citizenship of the parties may be relevant. All parties are

entitled to equal treatment and citizenship is not a proper basis for decision.

**E. Disposition of the Websites**

As part of the preliminary injunction, the court said "Defendant Lollicup must cease use of the website (www.honorusa.com) unless there is an agreement with Plaintiffs as to its future operation." Doc. 79, November 3, 2006 Order, at 15:8-10. As has been stated, the parties have not come to any agreement. Plaintiffs have informed the court that Lollicup owns a number of websites, "including, but not limited to, www.honorusa.com, www.honorcup.com, www.honor-cup.com, and www.honorplastic.com." Doc. 95, Plaintiffs' Supplemental, at 6:4-6. Plaintiffs ask the court to order Lollicup to 1) disclose all websites it owns or operates that include the word "honor" in the URL; 2) identify and provide contact information on the operators/webmasters of those websites; 3) disable each of those websites and not redirect users to other Lollicup websites; 4) identify and cease any search engine services Lollicup has contracted for that direct web searches for the term "honor" in relation to cup products to Lollicup websites; and 5) post a disclaimer on the www.lollicup.com website that Lollicup is not Honor Plastic Industrial Co., Ltd. and provide a link to Plaintiffs' website. Doc. 95, Plaintiffs' Supplemental, at 6:3-7:5. Lollicup seeks to continue its use of the website.

Plaintiffs' requests one, three, and four (in part) are warranted while requests two and five are not. Lollicup is required to disclose all websites owned or operated which contain the word "honor" in the URL; disable these websites (provide no content on them, or put up a sign that reads "under construction" with absolutely no other information, graphic, or text) and not redirect users to any other websites; and cease any search engine services that direct web searches for the term "honor" in relation to cups products to Lollicup websites. These restrictions serve to effectuate the thrust of the preliminary injunction order: to stop Lollicup from using the Honor brand name to attract business on the internet. Any specific disclaimers discussing the substance of the litigation or links to Plaintiffs' websites must be arranged by mutual agreement of the parties and will not be mandated by the court.

## IV. Order

Pending further order of the court, it is hereby ORDERED that:

1. Defendant Lollicup, its officers, agents, servants, employees, representatives, partners, and all persons acting in concert or participating with it are enjoined from using the Trademarks (namely the word "Honor" capitalized with curved arrows above and below, forming the impression of a circle and the word "Honor" itself as a brand) or any confusingly similar variation thereof printed on or in association with any disposable cup or related products that Lollicup distributes, imports, sells, manufactures, or otherwise promotes. Defendant Lollicup, its officers, agents, servants, employees, representatives, partners, and all persons acting in concert or participating with it are enjoined from representing themselves as Honor USA; distributing literature, advertising, marketing material, or business cards bearing the name "Honor" in any format; and distributing products bearing the Trademarks.

2. Defendant Lollicup, its officers, agents, servants, employees, representatives, partners, and all persons acting in concert or participating with it are specifically enjoined from using the Trademarks or any confusingly similar variation thereof at tradeshows and are specifically enjoined from using a booth display bearing the name "Honor" in any format.

3. Defendant Lollicup its officers, agents, servants, employees, representatives, partners, and all persons acting in concert or participating with it are directed to identify all websites they operate or own with the word "honor" in the URL and to disable these websites. That is Defendant Lollicup, its officers, agents, servants, employees, representatives, partners, and all persons acting in concert or participating with it must either provide no content on them leaving a blank page or put up a sign that reads "under construction" with absolutely no other information, graphic, or text, especially any other graphic or text which shows or suggests that Defendant Lollicup is the owner or operator of the website. Defendant Lollicup, its officers, agents, servants, employees, representatives, partners, and all persons acting in concert or participating with it are enjoined from redirecting users who access these websites to any other websites. Defendant Lollicup, its officers, agents, servants, employees, representatives, partners, and all persons acting in concert or participating with it are ordered to cease any search engine services

that direct users to a website owned or operated by Defendant Lollicup when a search is conducted for “honor” in connection with cups, lids, or other similar products.

This revised injunction shall take effect immediately. Plaintiffs bond amount of $36,000 remains the same.

IT IS SO ORDERED.

**Dated: December 18, 2006** **/s/ Anthony W. Ishii**
0m8i78 UNITED STATES DISTRICT JUDGE