# UNITED STATES DISTRICT COURT

# EASTERN DISTRICT OF CALIFORNIA

| | | |
|---|---|---|
| HONOR PLASTIC INDUSTRIAL CO. LTD and P&P INTERNATIONAL INC., | ) ) | CIV-F-06-0707 AWI DLB |
| Plaintiffs, | ) ) ) | ORDER FINDING DEFENDANT GUILTY OF CIVIL CONTEMPT FOR FAILURE TO COMPLY WITH |
| v. | ) ) | COURT ORDERS |
| LOLLICUP USA, INC., | ) ) | |
| Defendant. | ) ) | |
| _____ | ) ) ) | |

The matter before the court is whether Defendant should be sanctioned for failing to comply with the court's written temporary restraining order, issued on October 12, 2006. Doc. 49 and the court's written preliminary injunction order, issued on November 3, 2006. Doc. 79  A full evidentiary hearing on the matter was held on December 19, 2006.

## I. History

Plaintiffs in the case are Honor Plastic Industrial Co., Ltd. and P&P International, Inc. (collectively "Plaintiffs").  Defendant is Lollicup USA, Inc. ("Lollicup") which also operates under the fictitious business name of Honor USA, Inc.  Alan Yu is the CEO/President of Lollicup.  As this matter is tangential to the substantive case and those underlying facts have been covered in prior orders, a detailed history will be dispensed with.  The court has changed

1

1   the names used for the trademarks in question in the last two orders; all terminology in this order

2   follows the definitions in the November 3, 2006 order granting a preliminary injunction. Doc. 79.

3   　　　Plaintiffs filed a motion for a preliminary injunction seeking to enjoin Defendant from

4   using the Trademarks (the Silhouette Mark, the Plain Mark, and the Word Mark).  A hearing was

5   held on October 10, 2006.  By written order (signed on October 10, 2006 but not filed until

6   October 12, 2006), the court granted a temporary restraining order enjoining use of the Silhouette

7   Mark and Plain Mark only and setting a further hearing on the motion for preliminary injunction.

8   Doc. 49.  The second hearing was held on October 25, 2006.  By written order signed and dated

9   November 3, 2006, Lollicup was enjoined from using all three Trademarks and ordered to

10  segregate all products in their possession which bore the Trademarks. Doc. 79.  Further, Lollicup

11  was enjoined from representing itself as Honor USA and from using the term "Honor" in any

12  marketing or advertising.  Regarding the www.honorusa.com website, Lollicup was ordered to

13  stop using it unless the parties could come to a mutually agreeable solution.  Lollicup was

14  directed to file an affidavit by 4 PM November 15, 2006 specifying how Lollicup has complied

15  with the preliminary injunction.  The parties did not come to an agreement and Lollicup filed a

16  motion to modify the preliminary injunction order.  Lollicup's motion was denied, and a

17  modified injunction order that superceded the November 3, 2006 order was issued on December

18  19, 2006. Doc. 115

19  　　　At the October 25, 2006 hearing, Plaintiffs raised the issue that Lollicup had not complied

20  with the TRO.  The court orally issued an order to show cause why Lollicup should not be

21  sanctioned and set a briefing schedule and hearing on December 4, 2006.  At the hearing on

22  December 4, 2006, Lollicup elected to present testimony on the matter so an evidentiary hearing

23  was scheduled for December 19, 2006.

24  　　　Plaintiffs also alleged that Lollicup did not fully comply with the preliminary injunction.

25  This order considers alleged violations of both the TRO and the preliminary injunction. The

26  parties have filed various memos and declarations, not all of which are timely.  Nevertheless, this

27  order is based on all the filings and the testimony taken on December 19, 2006.

28

1

**II. Legal Standard**

2      Title 18 U.S.C. §401 states, "A court of the United States shall have power to punish by

3 fine or imprisonment, or both, at its discretion, such contempt of its authority, and none other,

4 as-- (1) Misbehavior of any person in its presence or so near thereto as to obstruct the

5 administration of justice; (2) Misbehavior of any of its officers in their official transactions; (3)

6 Disobedience or resistance to its lawful writ, process, order, rule, decree, or command."  Civil

7 contempt is encompassed within this section. See Britton v. Co-op Banking Group, 916 F.2d

8 1405, 1409 n.4 (9th Cir. 1990).

9      In one case, the Ninth Circuit overturned a trial court's finding that a party committed

10 civil contempt for failing to comply with a TRO on the basis that the trial court's TRO was

11 "improperly issued ex parte and failed to describe the prohibited conduct with specificity." Reno

12 Air Racing Ass'n v. McCord, 452 F.3d 1126, 1134 (9th Cir. 2006).  Nevertheless, the court

13 determined that, "Civil contempt in this context consists of a party's disobedience to a specific

14 and definite court order by failure to take all reasonable steps within the party's power to comply.

15 The contempt need not be willful; however, a person should not be held in contempt if his action

16 appears to be based on a good faith and reasonable interpretation of the court's order." Reno Air

17 Racing Ass'n v. McCord, 452 F.3d 1126, 1130 (9th Cir. 2006), quotations omitted.  "Whether

18 contempt is civil or criminal depends on the intended effect of the penalty imposed. If the intent

19 is remedial, or if the penalty is conditional in that it is meant to compel the defendant to act, the

20 contempt is civil. If the intent is punitive and the penalty is unconditional, the contempt is

21 criminal." United States v. Laurins, 857 F.2d 529, 534 (9th Cir. 1988).  The U.S. Supreme Court

22 has stated, "A contempt fine accordingly is considered civil and remedial if it either coerces the

23 defendant into compliance with the court's order, or compensates the complainant for losses

24 sustained. Where a fine is not compensatory, it is civil only if the contemnor is afforded an

25 opportunity to purge. Thus, a flat, unconditional fine totaling even as little as $ 50 announced

26 after a finding of contempt is criminal if the contemnor has no subsequent opportunity to reduce

27 or avoid the fine through compliance." Int'l Union v. Bagwell, 512 U.S. 821, 829 (1994).  "If the

28 fine, or any portion of the fine, is coercive, it should be payable to the court. Moreover, in

**3**

1 | determining how large a coercive sanction should be the court should consider the character and

2 | magnitude of the harm threatened by continued contumacy, and the probable effectiveness of any

3 | suggested sanction." General Signal Corp. v. Donallco, Inc., 787 F.2d 1376, 1380 (9th Cir.

4 | 1986), citations omitted.

5 | "[C]ivil contempt sanctions, or those penalties designed to compel future compliance

6 | with a court order, are considered to be coercive and avoidable through obedience, and thus may

7 | be imposed in an ordinary civil proceeding upon notice and an opportunity to be heard. Neither a

8 | jury trial nor proof beyond a reasonable doubt is required." Int'l Union v. Bagwell, 512 U.S. 821,

9 | 827 (1994). "The party alleging civil contempt must demonstrate that the alleged contemnor

10 | violated the court's order by clear and convincing evidence, not merely a preponderance of the

11 | evidence." In re Dual-Deck Video Cassette Recorder Antitrust Litig., 10 F.3d 693, 695 (9th Cir.

12 | 1993). While a full trial is normally held, where "the affidavits offered in support of a finding of

13 | contempt are uncontroverted, we have held that a district court's decision not to hold a full-

14 | blown evidentiary hearing does not violate due process." Peterson v. Highland Music, 140 F.3d

15 | 1313, 1324 (9th Cir. 1998).

## III. Discussion

### A. Temporary Restraining Order

The TRO was issued on October 12, 2006 and took effect immediately. The precise wording of the substantive direction to Lollicup states:

> 1. Defendant Lollicup, its officers, agents, servants, employees, representatives, partners, and all persons acting in concert or participating with it be, and hereby are, temporarily enjoined from using the Honor Mark (the word "Honor" capitalized with curved arrows above and below, forming the impression of a circle) or any confusingly similar variation thereof printed on or in association with any cup or related products that Lollicup distributes, imports, sells, manufactures, or otherwise promotes.

> 2. Defendant Lollicup, its officers, agents, servants, employees, representatives, partners, and all persons acting in concert or participating with it be, and hereby are specifically enjoined from using the Honor Mark or any confusingly similar variation thereof at tradeshows, including the 'Coffee Fest Seattle' tradeshow on October 27-29, 2006 in Seattle, Washington.

4

1    Doc. 49, October 12, 2006 Order, at 8:24-9:6.[1]  Based on that wording, Plaintiffs assert that the

2    TRO should be read to apply to the Word Mark as well since the "word mark 'Honor' is

3    unquestionably confusingly similar to the mark 'Honor' with stylized arrows." Doc. 95,

4    Plaintiffs' Supplemental, at 3:1-2.  That interpretation of the TRO is categorically rejected.

5    Plaintiffs' submitted a proposed order which included language dealing with the Word Mark.

6    The issue of the Word Mark was brought up at the hearing on October 10, 2006 and the court

7    specifically excised that language in formulating the TRO.  The TRO only covers the Silhouette

8    Mark and Plain Mark.

9         In his declaration, Mr. Yu admits that at the Seattle trade show of October 27-29, 2006,

10   "one of the fliers that were handed out at the Lollicup booth at the show had a picture on it of a

11   lid that still showed the Honor Trademark. All the written verbiage in the flier had been carefully

12   modified to eradicate any and all references to, or pictures of, the Honor Trademark. The picture

13   of the lid was a completely inadvertent accident, and not intended in any way to have been left in

14   the flier." Doc. 99, Yu Declaration, at 2:7-16.  Plaintiffs have provided a copy of the offending

15   flier. Doc. 97, Ex. O.  From a picture of the overall booth, it appears that there were two other

16   fliers offered, several large images of Lollicup's disposable cup and related products, and

17   samples of those products. See Doc. 97, Ex. N.  Neither the Silhouette Mark nor the Plain Mark

18   were in any of the other visual presentations.  Plaintiffs point out that Mr. Yu did not admit to the

19   violation until after the Plaintiffs had pointed it out in its filings on November 15, 2006. Doc.

20   100, Plaintiffs' Reply, at 5:19-26.  The whole sequence of events does raise some suspicion.

21   Willfulness is not a requirement for civil contempt. United States v. Armstrong, 781 F.2d 700,

22   712 (9th Cir. 1986).  But, "substantial compliance with the terms of a consent judgment is a valid

23   defense to a charge of criminal contempt, and it appears to be a defense to a finding of civil

24   contempt as well." Vertex Distributing, Inc. v. Falcon Foam Plastics, Inc., 689 F.2d 885, 891 (9th

25   Cir. 1982).  Requiring clear and convincing evidence of some flavor of bad faith is appropriate in

26

27

28        **[1]**The mark the court previously referred to as the Honor Mark is now called the Plain
     Mark.

1   this case.  Under these circumstances, the purportedly accidental inclusion of the Plain Mark in

2   one flier will not be the basis for civil contempt.

3        In the declaration, Mr. Yu states that "Since the temporary restraining order was issued,

4   Lollicup USA, Inc. has not delivered any product, including any PET cups or sipper lids or paper

5   products which depict the 'Honor' trademark." Doc. 99, Yu Declaration at 1:24-26.  Lollicup has

6   presented the live testimony of Mr. Yu.  Discussion of sale/delivery is addressed separately

7   below.  Even assuming that no goods were actually sold or delivered, Plaintiffs claim that the

8   TRO has been violated as Lollicup's website showed goods bearing the Plain Mark advertised as

9   available for sale. Doc. 96, Exs. E and F, website printouts dated November 3, 2006.  The

10  parties' written statements discuss two slightly differently things.  Lollicup represents that it has

11  not <u>delivered</u> any product bearing the Plain Mark while Plaintiffs point out that Lollicup has

12  <u>advertised</u> such product.  Mr. Yu has stated that since the preliminary injunction has been issued,

13  all product bearing the Plain Mark was removed from the website.  Mr. Yu does not represent

14  that these images were removed after the issuance of the TRO.

15       Returning to the text of the TRO, Defendant was enjoined from using the Plain or

16  Silhouette Mark on any cup or related product that Lollicup "distributes, imports, sells,

17  manufactures, or otherwise promotes." Doc. 49, October 12, 2006 Order, at 9:1-2.  The language

18  is not limited to sale but rather includes promotion.  Advertising goods bearing the Plain Mark as

19  available for sale on their website constitutes a violation of the TRO. Plaintiffs have provided

20  detailed affidavits and Lollicup has provided insufficient evidence to counter the allegations.

21  The continued advertisement of goods bearing the Plain Mark for weeks after the TRO went into

22  effect constitutes a clear violation of that order.

23

24  **B. Preliminary Injunction**

25       The preliminary injunction was issued on November 3, 2006 and was effective

26  immediately.  The precise wording of the substantive direction to Lollicup states:

27       1. Defendant Lollicup, its officers, agents, servants, employees, representatives, partners,
         and all persons acting in concert or participating with it are enjoined from using the
28       Trademarks (namely the word "Honor" capitalized with curved arrows above and below,

**6**

forming the impression of a circle and the word "Honor" itself as a brand) or any confusingly similar variation thereof printed on or in association with any disposable cup or related products that Lollicup distributes, imports, sells, manufactures, or otherwise promotes.  Defendant Lollicup is enjoined from representing itself as Honor USA; is enjoined from distributing literature, advertising, marketing material, or business cards bearing the name "Honor" in any format; and is enjoined from distributing products bearing the Trademarks.  Defendant Lollicup must cease use of the website (www.honorusa.com) unless there is an agreement with Plaintiffs as to its future operation.

2. Defendant Lollicup, its officers, agents, servants, employees, representatives, partners, and all persons acting in concert or participating with it be, and hereby are specifically enjoined from using the Trademarks or any confusingly similar variation thereof at tradeshows and are specifically enjoined from using a booth display bearing the name "Honor" in any format.

Doc. 79, November 3, 2006 Order, at 14:28-15:14.  In contrast with the TRO, the preliminary

injunction does cover the use of the Word Mark and specifically forbids Lollicup from

representing itself as Honor USA.

As stated above, Mr. Yu testified that images of goods bearing the Plain Mark were

removed after issuance of the November 3, 2006 preliminary injunction.  Plaintiffs point out that

Lollicup continued to advertise for sale products bearing the Plain Mark even after the issuance

of the preliminary injunction, providing website printouts dated November 8, 2006. Doc. 96,

Exs. G and H.  Under cross examination, Mr. Yu admitted that the images were not completely

removed until November 15, 2006.  As previously discussed, advertising these products for sale

constitutes a violation of the TRO and the preliminary injunction.

The parties make conflicting claims about whether Lollicup has actually sold and

delivered product bearing the Plain Mark since the TRO was issued.  Plaintiffs provide the

declarations of Hugo Larranaga, Jr.  He states, " I know Mr. Bill Spencer at P&P International,

Inc. through an acquaintance. I am not a customer of P&P International, Inc. or Honor Plastic

Industrial Co. Ltd., nor am I affiliated with either. company." Doc. 98, Larranaga Declaration, at

2:2-4.  William Spencer of P&P International, Inc. said, "I know Mr. Hugo Larranaga, Jr. through

an industry contact....I asked Mr. Larranaga to purchase product from the www.honorusa.com

website to show that Lollicup is currently filling new orders for product bearing the Honor

trademarks." Doc. 101, Spencer Declaration, at 2:4-8.  Mr. Larranaga states that he placed two

orders for cup lids Plain Mark on November 8-9, 2006 and received those goods on November 9-

1    10, 2006. Doc. 98, Larranaga Declaration, at 2:11-3:2.  Further, the invoice for one sale listed

2    Alan Yu as the sales representative for the transaction. Doc. 98, Ex. Q.  Mr. Larranaga says that

3    he placed a third order (again through the www.honorusa.com website) for cup lids bearing the

4    Plain Mark on November 17, 2006 and received those goods on November 20, 2006. Doc. 106,

5    Larranaga Declaration, at 2:11-23.  Mr. Larranaga specifically confirms that the cup lids did in

6    fact bear the Plain Mark.  Plaintiffs presented the live testimony of Mr. Spencer and the goods

7    and invoices for the above transactions.

8         Lollicup has presented the live testimony of Alan Yu.  He states the company's stock

9    contain both product purchased during the distributorship (in boxes marked with Plain Mark) and

10    product purchased after the end of that relationship (in boxes marked with Lollicup's new

11    trademark, "Karat").  Mr. Yu states that the new product was purchased from Hong Kong Cup, a

12    company that Honor Plastic referred Lollicup to.  Mr. Yu states that after Plaintiffs brought Mr.

13    Larranaga's purchases to Lollicup's attention, he investigated the matter and discovered that

14    some of the product Lollicup received from Hong Kong Cup in boxes marked "Karat" actually

15    bore the Plain Mark.  Lollicup had expected them to be free of any marks.  Lollicup brought in

16    one such unopened box which upon opening, turned out to contain cup lids bearing the Plain

17    Mark.  Mr. Yu stated that before opening the box, he did not know whether or not they contained

18    lids that bore no marking or lids bearing the Plain Mark.  It appears that Lollicup cannot account

19    for the contents of their overall stock and cannot guarantee that product bearing the Plain Mark

20    will not be sent out to customers.  This constitutes an independent violation of the preliminary

21    injunction which specifically directed that Lollicup was "required to, no later than November 15,

22    2006, segregate all products in their possession, custody, or control that bear any of the

23    Trademarks or any confusingly similar variation thereof and destroy or store these products in a

24    secure location." Doc. 79, November 3, 2006 Order, at 15:16-19.

25         Lollicup also admits to continued use of the www.honorusa.com website and Honor USA

26    as a fictitious business name. Doc. 99, Yu Declaration, at 3:14-4:7.  This is a fact that all parties

27    agree on.  Lollicup's motion for reconsideration sought to have the portions of the preliminary

28    injunction that deal with the fictitious name, website, and the Word Mark modified.  However,

1    "persons subject to an injunctive order issued by a court with jurisdiction are expected to obey

2    that decree until it is modified or reversed, even if they have proper grounds to object to the

3    order." Gte Sylvania v. Consumers Union of United States, 445 U.S. 375, 386 (1980).  Lollicup's

4    continued advertisement of product bearing the Plain Mark, use of the website, and representing

5    itself as Honor USA are violations of the preliminary injunction.

6

7    **C. Sanctions**

8            Plaintiffs have provided clear and convincing evidence that Lollicup has egregiously

9    violated both the TRO and the preliminary injunction.  Lollicup has essentially argued that it has

10   made some effort to comply with the court orders.  While substantial compliance with court

11   orders may be a valid defense, the court cannot find that there has been substantial compliance in

12   this case.  Lollicup's efforts have fallen far short of what is required.  Further, Lollicup

13   deliberately violated the preliminary injunction through continued use of the website and

14   representing itself as Honor USA.  Lollicup has acted both knowingly and recklessly in violating

15   the TRO and preliminary injunction.  The court formally cites Lollicup for civil contempt;

16   sanctions are absolutely warranted.

17           To compensate Plaintiffs for the damages they have suffered, the court orders Lollicup to

18   pay Plaintiffs' actual attorney's fees and costs for these motions.  Within twenty-one days,

19   Plaintiffs are directed to file an accounting of the attorney's fees and costs directly related the

20   motions for the temporary restraining order (original preliminary injunction request transformed

21   into a TRO), preliminary injunction, order to show cause, and Lollicup's motion for

22   reconsideration.  Plaintiffs' attorneys must file an affidavit affirming that the sums claimed are

23   the actual amounts Plaintiffs have spent on the four motions.

24           The court will review the accounting and will thereafter issue an order directing Lollicup

25   to pay some or all of it.

26           Since the purpose of the sanction is to recompense Plaintiffs for the amounts they have

27   actually spent, the attorney's fees will not be subject to the multi-factor test under Local Rule 54-

28   293(c).  Lollicup must pay Honor Plastic these attorney's fees and costs within five (5) business

days after the court issues its order directing Lollicup to pay the attorney's fees and costs and must file an affidavit with the court confirming payment.

As Lollicup has been violating the TRO and preliminary injunction for many weeks, additional inducement appears necessary to force Lollicup's compliance.  On November 8, 2006, Mr. Yu stated that "We now sell approximately $10,000.00 worth of products per month on this website." Doc. 84, Yu Declaration, at 3:6-7.  Yet, on November 17, 2006, Mr. Yu represented that Lollicup "is currently receiving orders to ship product to it's customers that amount to about $100,000.00 per week." Doc. 99, Yu Declaration, at 6:8-9.  This claim is contradicted by Lollicup's own sales summary, which shows that sales of cups, glasses, and lids from April 2004 through August 2006 only totaled $2.70 million. Doc. 50, Ex. M.  According to those figures, Lollicup was selling approximately $100,000 of product each month rather than each week.  At this point, the court can not fully rely on the figures presented by Lollicup.  A fine of $3,000 per day should be sufficient to ensure Lollicup complies with court orders..  Lollicup must file an affidavit by 4:00 p.m. Friday, December 22, 2006 setting out in detail how it has fully complied with the modified injunction order.  If Lollicup has not submitted such an affidavit by 4:00 p.m. Friday, December 22, 2006, sanctions (payable to the court) will be levied at the rate of $3,000 per day (with a 4:00 p.m. deadline each day).  After the filing of Lollicup's affidavit, Plaintiffs may make further filings to show non-compliance with the modified injunction order.


### III. Order

It is hereby ORDERED that:

Defendant Lollicup shall file with the court an affidavit setting forth in detail the manner and form in which Defendant Lollicup, its officers, agents, servants, employees, representatives, partners, and all persons acting in concert or participating with it have complied with the terms of the modified injunction order (Doc. 115) by 4:00 p.m. Friday, December 22, 2006.  Failure to comply with the modified injunction order and to file said affidavit by the appointed time will result in sanctions against Defendant Lollicup to be levied at the rate of $3,000 per day (with a 4:00 p.m. deadline each day).

It is hereby FURTHER ORDERED that:

Defendant Lollicup shall pay Plaintiffs' actual attorney's fees and costs for these motions in a manner and at a time as set forth above.

IT IS SO ORDERED.

**Dated:**    **December 19, 2006**                    **/s/ Anthony W. Ishii**
0m8i78                                      UNITED STATES DISTRICT JUDGE