1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

**UNITED STATES DISTRICT COURT**

**EASTERN DISTRICT OF CALIFORNIA**

| | |
|---|---|
| HONOR PLASTIC INDUSTRIAL CO.<br>LTD and P&P INTERNATIONAL INC., ) <br>       ) <br>       Plaintiffs, ) <br>       ) <br>  v.    ) <br>       ) <br>LOLLICUP USA, INC., ) <br>       ) <br>       Defendant. ) <br>_____ ) | CIV-F-06-0707 AWI DLB<br><br>**ORDER RE: PLAINTIFFS'<br>MOTION FOR SANCTIONS** |

        The matter is before the court on Plaintiffs' motion to have Defendant sanctioned for continued violation of the court's modified injunction order issued on December 19, 2006. Defendant opposes the motion. The matter was taken under submission without benefit of oral argument.

**I. History**

        Plaintiffs in the case are Honor Plastic Industrial Co., Ltd. and P&P International, Inc. (collectively "Plaintiffs"). Defendant is Lollicup USA, Inc. ("Lollicup") which has also operated under the fictitious business name of Honor USA, Inc. Alan Yu is the CEO/President of Lollicup. As the underlying facts have been covered in prior orders, a detailed history will be dispensed with. All terminology in this order follows the definitions in the November 3, 2006 order granting a preliminary injunction. Doc. 79.

1

1    Plaintiffs filed a motion for a preliminary injunction seeking to enjoin Defendant from

2    using the Trademarks (the Silhouette Mark, the Plain Mark, and the Word Mark). On October 12,

3    2006, the court granted a temporary restraining order enjoining use of the Silhouette Mark and

4    Plain Mark only and setting a further hearing on the motion for preliminary injunction. Doc. 49.

5    On November 3, 2006, Lollicup was enjoined from using all three Trademarks and ordered to

6    segregate all products in their possession which bore the Trademarks. Doc. 79.  Further, Lollicup

7    was enjoined from representing itself as Honor USA, from using the term "Honor" in any

8    marketing or advertising.  The court put off any decision regarding use of the

9    www.honorusa.com website to allow the parties the chance to come to a mutually agreeable

10   solution.  Lollicup was directed to file an affidavit by 4 PM, November 15, 2006 specifying how

11   Lollicup has complied with the preliminary injunction.  Lollicup filed a motion to modify the

12   preliminary injunction order.  Lollicup's motion was denied, and a modified injunction order that

13   superceded the November 3, 2006 order was issued on December 19, 2006. Doc. 115.  The

14   modified injunction further ordered Lollicup to shut down any website it owned which had the

15   word "honor" as part of its domain name.

16   Plaintiffs had previously alleged that Lollicup did not comply with the TRO.  The court

17   issued an order to show cause why Lollicup should not be sanctioned.  The court held an

18   evidentiary hearing on December 19, 2006 to examine if Lollicup had violated the October 12

19   TRO Order and/or the November 3 Preliminary Injunction Order.  On December 20, 2006, the

20   court issued a written order finding Lollicup guilty of civil contempt for violating both the TRO

21   and the preliminary injunction.  "To compensate Plaintiffs for the damages they have suffered,

22   the court orders Lollicup to pay Plaintiffs' actual attorney's fees and costs for these

23   motions....The court will review the [Plaintiffs' attorneys'] accounting and will thereafter issue

24   an order directing Lollicup to pay some or all of it." Doc. 117, December 20, 2006 Order, at

25   9:17-25.  Lollicup was given until December 22, 2006 to comply with the December 19, 2006

26   modified injunction order and was warned that further violation of that order would result in

27   sanctions of $3,000/day.

28   On March 7, 2007, Plaintiffs filed this motion alleging the following violations: Lollicup

2

1   registered for the Coffee Fest Cyber Expo as Lollicup dba Honor USA in late October 2006 and

2   failed to change its registration (which was listed on a website owned by the tradeshow

3   organizers) in light of the modified injunction order and civil contempt order; Lollicup registered

4   for the ISSA/Interclean tradeshow as Lollicup dba Honor USA on December 18, 2006 and failed

5   to change its registration (which was listed on a website owned by the tradeshow organizers) in

6   light of the modified injunction order and civil contempt order; and the use of the terms "Honor"

7   and " Honor USA" on a Lollicup owned website (www.cupdepot.com) through December 29,

8   2006.  Lollicup argues that it did ask the tradeshow organizers to change its name from Lollicup

9   dba Honor USA to Lollicup once Plaintiffs brought that fact to their attention and that it was not

10  obligated to correct the information on third party tradeshow websites under the December 19,

11  2006 modified injunction order.  Lollicup does not address the charge that a website it owned

12  still made reference to "Honor" or "Honor USA" after the December 22, 2006 deadline.

13

14                                    **II. Legal Standard**

15          Title 18 U.S.C. §401 states, "A court of the United States shall have power to punish by

16  fine or imprisonment, or both, at its discretion, such contempt of its authority, and none other,

17  as-- (1) Misbehavior of any person in its presence or so near thereto as to obstruct the

18  administration of justice; (2) Misbehavior of any of its officers in their official transactions; (3)

19  Disobedience or resistance to its lawful writ, process, order, rule, decree, or command."  Civil

20  contempt is encompassed within this statute. See <u>Britton v. Co-Op Banking Group</u>, 916 F.2d

21  1405, 1409 n.4 (9th Cir. 1990).

22          In one case, the Ninth Circuit overturned a trial court's finding that a party committed

23  civil contempt for failing to comply with a TRO on the basis that the trial court's TRO was

24  "improperly issued ex parte and failed to describe the prohibited conduct with specificity." <u>Reno</u>

25  <u>Air Racing Ass'n v. McCord</u>, 452 F.3d 1126, 1134 (9th Cir. 2006).  Nevertheless, the court

26  determined that, "Civil contempt in this context consists of a party's disobedience to a specific

27  and definite court order by failure to take all reasonable steps within the party's power to comply.

28  The contempt need not be willful; however, a person should not be held in contempt if his action

                                              **3**

1  appears to be based on a good faith and reasonable interpretation of the court's order." <u>Reno Air</u>

2  <u>Racing Ass'n v. McCord</u>, 452 F.3d 1126, 1130 (9th Cir. 2006), quotations omitted.  "Whether

3  contempt is civil or criminal depends on the intended effect of the penalty imposed. If the intent

4  is remedial, or if the penalty is conditional in that it is meant to compel the defendant to act, the

5  contempt is civil. If the intent is punitive and the penalty is unconditional, the contempt is

6  criminal." <u>United States v. Laurins</u>, 857 F.2d 529, 534 (9th Cir. 1988).  The U.S. Supreme Court

7  has stated, "A contempt fine accordingly is considered civil and remedial if it either coerces the

8  defendant into compliance with the court's order, or compensates the complainant for losses

9  sustained. Where a fine is not compensatory, it is civil only if the contemnor is afforded an

10 opportunity to purge. Thus, a flat, unconditional fine totaling even as little as $50 announced

11 after a finding of contempt is criminal if the contemnor has no subsequent opportunity to reduce

12 or avoid the fine through compliance." <u>Int'l Union v. Bagwell</u>, 512 U.S. 821, 829 (1994).

13 "Where compensation is intended, a fine is imposed, payable to the complainant. Such fine must

14 of course be based upon evidence of complainant's actual loss, and his right, as a civil litigant, to

15 the compensatory fine is dependent upon the outcome of the basic controversy." <u>United States v.</u>

16 <u>United Mine Workers</u>, 330 U.S. 258, 304 (1947).  "If the fine, or any portion of the fine, is

17 coercive, it should be payable to the court. Moreover, in determining how large a coercive

18 sanction should be the court should consider the character and magnitude of the harm threatened

19 by continued contumacy, and the probable effectiveness of any suggested sanction." <u>General</u>

20 <u>Signal Corp. v. Donallco, Inc.</u>, 787 F.2d 1376, 1380 (9th Cir. 1986), citations omitted.

21     "[C]ivil contempt sanctions, or those penalties designed to compel future compliance

22 with a court order, are considered to be coercive and avoidable through obedience, and thus may

23 be imposed in an ordinary civil proceeding upon notice and an opportunity to be heard. Neither a

24 jury trial nor proof beyond a reasonable doubt is required." <u>Int'l Union v. Bagwell</u>, 512 U.S. 821,

25 827 (1994).  "The party alleging civil contempt must demonstrate that the alleged contemnor

26 violated the court's order by clear and convincing evidence, not merely a preponderance of the

27 evidence." <u>In re Dual-Deck Video Cassette Recorder Antitrust Litig.</u>, 10 F.3d 693, 695 (9th Cir.

28 1993).  While a full trial is normally held, where "the affidavits offered in support of a finding of

4

1   contempt are uncontroverted, we have held that a district court's decision not to hold a full-

2   blown evidentiary hearing does not violate due process." Peterson v. Highland Music, 140 F.3d

3   1313, 1324 (9th Cir. 1998).

4

5                                           **III. Discussion**

6   **A. Third Party Websites**

7           Lollicup registered at various tradeshows as Lollicup dba Honor USA prior to the

8   December 19, 2006 contempt hearing.  The tradeshow organizers then posted that information on

9   websites accessible to the general public.  After the civil contempt hearing, Lollicup did not

10  make the effort to change their registration at these tradeshows to reflect the fact that they were

11  no longer doing business as Honor USA.  Plaintiffs claim that failure constitutes a violation of

12  the modified injunction order and give rise to further sanctions.  Lollicup argues that it was not

13  required to do so by the modified injunction order.

14          Plaintiffs posit "The issue here is whether Lollicup improperly represented itself as Honor

15  USA in submitting its registrations for at least the two referenced tradeshow websites, and

16  whether it failed to correct this improper representation despite the Court's modified PI Order."

17  Doc. 153, Reply, at 1:18-20.  The registrations were submitted in late October 2006 and on

18  December 18, 2006.  Both registrations were submitted before the civil contempt hearing and

19  before the modified injunction was issued on December 19, 2006.  Logically, the registrations

20  themselves could not constitute violations of the modified injunction order based their temporal

21  relation.  The assertion that the December 18, 2006 registration violated the November 3, 2006

22  preliminary injunction is a separate matter not before the court in this motion.  The court focuses

23  on whether the modified injunction order required Lollicup to inform the tradeshow organizers of

24  their new status after December 20, 2006.

25          The modified injunction order directed Lolliocup to comply with the following:

26          1. Defendant Lollicup, its officers, agents, servants, employees, representatives, partners,
            and all persons acting in concert or participating with it are enjoined from using the
27          Trademarks (namely the word 'Honor' capitalized with curved arrows above and below,
            forming the impression of a circle and the word 'Honor' itself as a brand) or any
28          confusingly similar variation thereof printed on or in association with any disposable cup

                                                    **5**

or related products that Lollicup distributes, imports, sells, manufactures, or otherwise promotes. Defendant Lollicup, its officers, agents, servants, employees, representatives, partners, and all persons acting in concert or participating with it are enjoined from representing themselves as Honor USA; distributing literature, advertising, marketing material, or business cards bearing the name 'Honor' in any format; and distributing products bearing the Trademarks.

2. Defendant Lollicup, its officers, agents, servants, employees, representatives, partners, and all persons acting in concert or participating with it are specifically enjoined from using the Trademarks or any confusingly similar variation thereof at tradeshows and are specifically enjoined from using a booth display bearing the name 'Honor' in any format.

3. Defendant Lollicup its officers, agents, servants, employees, representatives, partners, and all persons acting in concert or participating with it are directed to identify all websites they operate or own with the word 'honor' in the URL and to disable these websites. That is Defendant Lollicup, its officers, agents, servants, employees, representatives, partners, and all persons acting in concert or participating with it must either provide no content on them leaving a blank page or put up a sign that reads 'under construction' with absolutely no other information, graphic, or text, especially any other graphic or text which shows or suggests that Defendant Lollicup is the owner or operator of the website. Defendant Lollicup, its officers, agents, servants, employees, representatives, partners, and all persons acting in concert or participating with it are enjoined from redirecting users who access these websites to any other websites. Defendant Lollicup, its officers, agents, servants, employees, representatives, partners, and all persons acting in concert or participating with it are ordered to cease any search engine services that direct users to a website owned or operated by Defendant Lollicup when a search is conducted for 'honor' in connection with cups, lids, or other similar products.

Doc. 115, December 19, 2006 Order, at 10:3-11:2. Lollicup focuses on the third paragraph, specifying what Lollicup must do with respect to websites it owns and operates. The tradeshow websites are not owned or operated by Lollicup and so are not covered by that paragraph. However, that ignores the other first two paragraphs. Lollicup was specifically told that it could not represent itself as Honor USA and that it could not use the Trademarks (which includes the Word Mark "Honor") at tradeshows. If Lollicup knows that a tradeshow organizer is advertising Lollicup's presence as Lollicup dba Honor USA, then it must take action to correct that mistake. Knowingly sitting by and doing nothing constitutes a violation of the preliminary injunction.

Once Plaintiffs informed Lollicup of the continued usage of Honor USA on the tradeshow organizers' websites, Lollicup promptly contacted the organizers to apprise them that they were no longer doing business as Honor USA. The change was reflected in the websites accessible to the public. The court shall not impose sanctions at this time, but Lollicup is on notice that it should review all its past registrations for tradeshows to ensure that the tradeshow organizers

1    understand Lollicup's changed circumstances.

2

3    **B. Use of the Word Mark on Lollicup Website**

4           The December 20, 2006 civil contempt order required Lollicup to be in full compliance of

5    the modified injunction order by December 22, 2006 to avoid penalties accruing at $3,000/day.

6    Plaintiffs sent Lollicup letters on December 26 and December 29, 2006, notifying it that "Honor"

7    or "Honor USA" was used on a Lollicup owned website (www.cupdepot.com). Doc. 147, Ex. H.

8    Lollicup removed the dozen or so references soon thereafter.  Neither party has provided the

9    court with printouts of the website showing the Word Mark.  The court itself has not been able to

10   access the site but assumes that it must have been a copy of the www.honorusa.com website,

11   modified in light of the court's orders.  The old website contained many instances of the Word

12   Mark, easily several dozen.  From Plaintiffs' letters, the court gathers that some of the references

13   were inactive hyperlinks to the defunct www.honorusa.com website.  Overall, it appears that the

14   uses of the Word Mark were minor and genuinely inadvertent.  While any use of the Word Mark

15   is a violation of the modified injunction, this minor infraction will not be the basis for sanctions

16   as Lollicup promptly expunged the offending usage once it was apprised of the situation.

17

18   **C. Attorney's Fees Pursuant to Past Civil Contempt**

19          The court now takes up the matter of Plaintiffs' attorneys fees and costs which are to be

20   awarded to Plaintiffs pursuant to the December 20, 2006 Order.  The court has reviewed the fee

21   summary provided by Plaintiffs' attorneys.  While the goal is to award Plaintiffs their actual fees

22   and, the amount must not be unreasonable.  Plaintiffs seek to recover $168,579.00 in attorneys

23   fees and $6,358.90 in costs for a total of $174,937.90.  The court accepts the hourly billing rates

24   ($210 to $420) as reflecting both Fresno and Chicago standards and will not adjust them to

25   conform to Fresno rates.  However, the number of hours billed (613) appears to be excessive on

26   first impression.  The court will award attorneys fees at this time for only half of those hours.

27   Should Plaintiffs ultimately win the case and seek attorneys fees under an applicable statute,

28   Plaintiffs may then present argument that the full 613 hours billed are justified and request

recompense for the other half.  Plaintiffs are awarded $84,289.50 in attorneys fees and $6,358.90 in costs for a total of $90,648.40.

### III. Order

Plaintiffs' motion for additional sanctions are DENIED.  Lollicup is to pay Plaintiffs $90,648.40 within twenty-five (25) days of the filing of this order.

IT IS SO ORDERED.

**Dated:    June 5, 2007**              **/s/ Anthony W. Ishii**
                                      UNITED STATES DISTRICT JUDGE